428 P.2d 424

**STATE LAND DEPARTMENT, Appellant,**

**v.**

**PAINTED DESERT PARK, INC., Appellee.**

**No. 7752–PR.**

Supreme Court of Arizona.

In Banc.

May 31, 1967.

Rehearing Denied July 6, 1967.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Charles C. Royall, Former Asst. Atty. Gen., Phoenix, for appellant.

Earl Platt, St. Johns, for appellee.

McFARLAND, Justice.

Painted Desert Park, Inc., herein referred to as the corporation, has been granted review of the decision of the Arizona Court of Appeals in the case of State Land Department v. Painted Desert Park, Inc., 3 Ariz.App. 568, 416 P.2d 989. The corporation's claim has previously been considered by the Arizona State Land Commissioner and the Board of Appeals of the Arizona State Land Department. A consolidated appeal was taken from the decision of these bodies to the Superior Court of Arizona in and for the County of Apache. That court rendered judgment in favor of the corporation and against the State of Arizona in the amount of $48,000.

The corporation and its predecessors leased a parcel of state school land for commercial purposes for many years. The land abutted U. S. Highway 66. Improvements were placed on the land, and a trading-post business was developed on the property. Over the years the annual rent which the corporation paid the state for the use of the land increased from $19.50 to $1,000. By the terms of the lease, the corporation's lease was to expire in June of 1960. Sometime prior to the expiration date of the lease, the State Land Department granted an easement for a non-access highway to the State of Arizona on application of the State Highway Department. The effect of this transaction was that Highway 66 was rerouted across the corporation's property. The old Highway 66 that passed the corporation's trading post was obliterated, and there was no ready access to the corporation's improvements. Thereafter, no actual commercial use was made of the leased property. Nevertheless the corporation made timely application for renewal of its lease, and tendered payment of the annual rental for the renewal which was duly receipted by the land department. The advance rental payment was subsequently refunded, and, on June 23, 1960, the land commissioner denied the corporation's renewal application on the grounds that it was not in the best interest of the state to continue leasing the subject land for commercial purposes since the land could not be used for the purpose applied for, and that it was "to the best interest of the state to restore subject land to the public domain of the United States for National Park purposes, and then in exchange obtain public domain land of equal value within Navajo or Apache County from which the schools of the State can derive a benefit." At the time of the denial of a renewal, the commissioner directed that an appraisal be made for the purpose of fixing the value of the improvements.

The commissioner then determined on August 15, 1960, that the corporation should take nothing for its improvements, finding them to be of no value.

The board of appeals, in review of the commissioner's decision in respect to valuation of the improvements, ordered that the corporation was entitled to remove from the leased premises certain removable improvements, including a walk-in refrigerator, a pipeline, and petrified wood. The conclusions reached by the board were that the improvements placed upon the land prior to June 25, 1952, were to be determined by the actual value of the land with and without the improvements, and that these improvements did not enhance the value of the land. The board further decided that the corporation was not entitled to reimbursement for the improvements placed on the land after June 25, 1952, if any, because the corporation had not sought prior approval as required by law, and because the improvements did not enhance the value of the land, in that they have no current value, and their condition at that time was so poor that a prudent person would not expend funds to recondition them.

The corporation then appealed to the superior court for a trial de novo pursuant to A.R.S. § 37–214, which provides in part:

"* * * The appeal shall be heard de novo at the earliest practical time by the court without a jury. The court shall hear evidence, make independent findings

of fact and conclusions of law from the evidence submitted, and shall either affirm, reverse or modify the decision appealed from. * * *"

The superior court rendered judgment affirming the decision of the land commissioner denying the corporation's application to renew its lease, but reversing the decision of the board of appeals of the land department denying the corporation reimbursement for improvements. The superior court ordered:

"3. That Appellant have and recover Judgment against the State of Arizona, to be paid in the manner provided by law, for the value of Appellant's reimbursable improvements as follows:

"Buildings as shown in Appellant's list of improvements filed with the state land department

$ 37,000.00

"Less cost of necessary repairs

3,000.00

"New Valuation for reimbursement purposes

$ 34,000.00

"Land leveling at business site including imported gravel

8,500.00

"Buried pipe line on leased premises

4,700.00

"Walk-in box not removable without destruction of building

800.00

Total reimbursable value of improvements

$ 48,000.00"

---

The first question presented in this appeal is the corporation's assertion that the land department was estopped to deny a renewal of the lease because the land department was dilatory in refusing the corporation's application for renewal and in returning the tender made with the application. For this reason the corporation contends the trial court erred in finding the land commissioner did not abuse his discretion in failing to renew the lease. This, and any other arguments which the corporation makes concerning errors in the findings, conclusions and judgment of the superior court are not properly before this court, as the corporation has failed to file any notice of appeal or cross-appeal from the judgment of the superior court denying renewal of the lease. In Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183, this Court said:

"* * * if appellee in its brief seeks only to support or defend and uphold the judgment of the lower court from which the opposing party appeals, a cross-appeal is not necessary. Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456; 4 C.J.S. Appeal and Error § 1299. If, however, it is sought by such cross-assignments to attack said judgment with a view either of 'enlarging his own rights thereunder or of lessening the rights of his adversary' he must cross-appeal by conforming with the rules of court by giving notice of appeal. United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087. In the absence of a cross-appeal the appellee can defend only as to items allowed below and cannot present rejected claims. * * *" 79 Ariz. at 310, 289 P.2d at 185.

To analyze the decision of the superior court in the instant case we must keep in mind the established principles which govern review by trial de novo from adminis-

trative decisions. In Ehle v. Tenney Trading Co., 56 Ariz. 241, 107 P.2d 210, we said:

"* * * While the trial court tries lease cases *de novo*, in Manning v. Perry, 48 Ariz. 425, 62 P.2d 693, we declared the rule to be that the decision of the land department should be accepted by the court, unless unsupported by or contrary to the evidence, or the result of fraud, or misapplication of the law, and we think that rule should be adhered to. * * *" 56 Ariz. at 243, 244, 107 P.2d at 211.

■ The instant action was tried de novo after consolidating the corporation's separate claims dealing with (1) the denial of the lease-renewal application, and (2) the finding that the corporation was not entitled to any compensation for improvements on the property. The superior court has jurisdiction to try de novo, on appeal, matters arising before the land department and decided therein. A.R.S. § 37–214. Williams v. Greene, 95 Ariz. 378, 390 P.2d 907; Montierth v. State Land Department, 84 Ariz. 100, 324 P.2d 228. But appellate jurisdiction is circumscribed by statute. Knape v. Brown, 86 Ariz. 158, 342 P.2d 195. A.R.S. § 37–214 provides only that the superior court, on trial de novo "shall either affirm, reverse, or modify the decision appealed from." Consideration of a similar provision relating to the Arizona Corporation Commission (A.R.S. § 40–254) led this court, in Arizona Corporation Commission v. Fred Harvey Transportation Co., 95 Ariz. 185, 388 P.2d 236, to conclude:

"* * * the hearing before the superior court is *de novo* and we have construed this to mean the superior court must exercise an 'independent judgment'. * * * This only means that the trial court is empowered to reach an independent conclusion. It does not mean that the superior court may enter a judgment independent and free of the confining language of the statute. * * *" 95 Ariz. at 190, 191, 388 P.2d at 239.

In Rojas v. Kimble, 89 Ariz. 276, 361 P.2d 403, we said:

"While a trial de novo means a new trial as though it were one of original jurisdiction in the superior court, this does not mean that the superior court may treat the action as though it had actually been commenced therein in order to escape jurisdictional limitation imposed by the Constitution and statutes. Jurisdictional limitations to hear and determine the case remain the same as were imposed upon the court from which the appeal arose. The appellate jurisdiction of the superior court may not be enlarged by pointing to that court's original jurisdiction which might have been invoked had the proceeding been initiated there. * * *" 89 Ariz. at 279, 361 P.2d at 406.

■ As the State Land Department points out, there were only two issues which were appealed under the trial de novo statute—the propriety of the commissioner's denial of the renewal application, and the issue of the value of the improvements. Any issue concerning possible liability to the corporation for the removal of access due to the rerouting of Highway 66 was not properly before the superior court, and it was without authority to litigate such matters. It is on this theory that the land department contends that findings of fact Nos. 3 and 6, conclusions of law Nos. 3, 4, and 5, and the portion of the judgment which reads

"* * * without prejudice, however, to Appellant's right to institute any appropriate action for damages for any loss sustained by Appellant flowing from the Land Commissioner's acts resulting in Appellant's loss of access to the leased premises prior to the termination of said lease."

are all improper.

Finding of fact No. 3 deals with the facts of the corporation's protest of the granting of the highway easement, and notice to the corporation of the grant. Finding No. 6

relates an element of the damage resulting from the non-access easement. Conclusion of law No. 3 states that the corporation was deprived of an opportunity to appeal from the decision of the land commissioner granting the non-access easement. Conclusion No. 4 states that the easement substantially negated the benefits of the lease. Conclusion No. 5 states that damages resulting from the easement cannot be determined by the court on this appeal.

The court itself in the above-quoted portion of its judgment recognized that it had no authority to decide any claims the corporation might have as a result of the re-routing of Highway 66, and, therefore, finding of fact No. 3, conclusions of law Nos. 3, 4, and 5 have no bearing on the issues to which the court was limited, and, as held by the court, were not and could not be considered in its determination.

Finding of fact No. 6 was properly considered only insofar as it shows that the improvements were more valuable commercially before the re-routing of Highway 66. This would be a factor in determining whether the land commissioner abused his discretion in denying the renewal, and also in determining the value of improvements when first placed on the land in accordance with A.R.S. § 37–322, subsection A, par. 1 (c).

The land department assigns as error the finding of the lower court that the corporation was properly entitled to reimbursement for its improvements. This assignment necessitates our consideration of whether reimbursement in any amount is proper under the circumstances of the instant case.

In A.R.S. § 37–291, subsection B, the land commissioner is given the discretionary power to refuse to renew a lease if such a renewal is not in the state's best interests. The only situations which would normally justify this discretionary refusal are where the land is leased to another, sold to the lessee or another, or taken over by the state for its own use. It is hard to envisage a situation where there would not be an abuse of discretion from the refusal to renew a lease if the lands in question were not to be put to one of the alternative uses enumerated above.

■■ It should be noted that we have statutes which specifically authorize the land commissioner to appraise the lessee's qualified improvements to determine the amount of compensation to be paid under the above situations. The basis of the refusal to renew in this case is that the land in question was to be traded to the federal government in exchange for federal lands suitable for grazing purposes which would be made school-fund lands and leased or sold to benefit the school fund in accordance with the purposes to which such lands are to be administered. Although this type of exchange is not one of common occurrence, it is within the intent of the legislative enactment providing for reimbursement. The obvious intent of the enactment is to provide for compensation for improvements placed on the land at the expense of the lessee.

The propriety of the appraisal by the land commissioner has not been questioned by the parties nor argued in their briefs. The form of transaction by which the proposed "trade" with the federal government was to be executed is not included in the record on this appeal, nor is this court informed as to whether this proposed transaction has ever gone beyond the stage of mere preliminary negotiations.

■ The land commissioner has treated it as a sale for the purposes of ordering the appraisal; however, the lessee is entitled to compensation whether the commissioner cancelled the lease for the purpose of a sale, a release, or taking the property for the use of the state, as the statute in each instance provides for the same method of fixing the value of the improvements for the purpose of reimbursement. A.R.S. § 37–132 makes it the duty of the land commissioner to "[c]lassify and appraise all state lands, together with the improvements thereon, for the purpose of sale or lease." A.R.S. § 37–214, subsection A, provides for an appeal from a decision of the land

commissioner relating to classification or appraisal of lands or improvements. Subsection E provides for an appeal to the superior court from the decision of the board of appeals, and provides for a trial de novo. A.R.S. § 37-442 provides that if an application for a taking by the state is approved by the governor the same be transmitted to the land department which shall appraise the improvements on the lands. A.R.S. § 37-293, subsection A, provides in the event of a disagreement as to the value of improvements between the retiring lessee and a new lessee, the retiring lessee or the new lessee may file an application with the land department, in which event the improvements must be appraised in the same manner and conditions as appraisals of improvements made when lands are sold.

The land commissioner's treatment of the proposed transaction as a sale is understandable in the light of a letter to the land commissioner from Fred C. Fagergren, Superintendent of the Petrified Forest National Monument, Holbrook, Arizona, which was included in the record. This letter was dated May 19, 1960—shortly before the renewal of the lease was denied on June 23, 1960. The letter stated:

"We understand the Commercial Lease of Mr. A. V. Tietjen [president of the corporation] of Gallup, New Mexico, on Section 2, T 19 N, R 24 E, which belongs to the State of Arizona, will expire on June 14. The National Park Service respectfully requests your withdrawal of this parcel of land from further com-

\* \* \* \* \* \*

"5. If the land is withdrawn from commercial leasing, the National Park Service will purchase the improvements on the land from Mr. Tietjen for an amount based on its fair appraisal value as soon as funds can be made available."

However, it is immaterial on this appeal as to whether the transaction should be categorized as a "taking" by the state, or as a "sale" since the question is the value, if any, which should have been fixed for the improvements. Any administrative misinterpretation, if such exists, should not be construed to deprive the lessee of the right of compensation for improvements to which he is otherwise entitled.

It might well be, as was argued by the corporation, that the commissioner should have continued to renew the lease so long as the payment of $1,000 per year was made by the corporation. If the corporation had been able to renew the lease it might have been able to make arrangements with the highway department for access roads and further development of the property for commercial purposes—particularly park services. However, the trial court found against the corporation in regard to the renewal of the lease, and from this ruling it made no appeal.

In the instant case the land commissioner refused to renew the lease on the ground that the continued leasing was not in the best interests of the state, by authority of A.R.S. § 37-291. The land commissioner, by law, is made the trustee of school lands. The statute sets up the procedure which the legislature considers to be proper for the lease and sale of these lands as provided for in the Enabling Act. Under this procedure the legislature has recognized the importance of protecting the rights of lessees in leased premises and the value of improvements placed upon the same. The protection of the rights of a lessee for improvements placed upon premises is to the best interests of the state as trustee, for the reason that otherwise the state would not be able to lease such property to advantage. Unless a lessee was so protected, he would not be willing to place valuable improvements on the property, and it would be difficult to lease it in some instances—particularly for commercial purposes. In the instant case, the rental value was increased from $19.50 to $1,000 per year, which evidently would not have been possible had the lessee not thought he was being protected by having the right to renew the lease or, if the same were not renewed, to have the opportunity of re-

ceiving at least a part of the cost of his improvements.

In the denial of the renewal, the commissioner stated:

> "Painted Desert Park has placed improvements on subject property for which reimbursement should be made in conformity with law."

and then found that it was not in the best interests of the state to continue leasing the land for commercial purposes in this case, where the land can no longer be used for the purposes applied for, and stated further:

> "* * * It is, however, to the best interest of the State to restore the subject matter to the public domain of the United States for National Park purposes, and in exchange, obtain public domain land of equal value within Navajo or Apache County, from which the schools of the state can derive benefit."

Then it was ordered:

> "THEREFORE IT IS ORDERED That renewal application number C–26 filed by Painted Desert Park for * * * (Description of land) * * * be and the same is hereby denied.
>
> "IT IS FURTHER ORDERED that the rental and fees tendered to the State Land Department be returned to the applicant forthwith.
>
> "IT IS FURTHER ORDERED that an appraisal be made forthwith by the State Land Department to establish the present market value of any reimbursable improvements existing on land described hereinabove so that the former lessee can be properly reimbursed.
>
> "Given under my hand and Official Seal of the State Land Department of Arizona this 23rd day of June, 1960.
> (signed)
>
> OBED M. LASSEN
> STATE LAND COMMISSIONER"

It will be noted that the land commissioner in his administrative interpretation of the law recognized his duty to see that the lessee was reimbursed for its improvements. On the same date he addressed a letter to the attorney for the corporation requesting a report of improvements made upon the property. The corporation, on June 28, 1960, complied with this request, and sent a notice of appeal from the denial of its application for renewal of the lease.

[8] When the commissioner found that it was not in the best interests of the state to re-lease the land upon which the improvements had been placed, it was his duty, in disposing of the property, to protect the lessee. The commissioner's action in denying the lease indicated that he had another opportunity which would give the state a benefit greater than $1,000 a year; otherwise, it was his duty to accept the $1,000 rental so long as the lessee was willing to pay.

The commissioner contends that the corporation is not entitled to reimbursement or compensation for improvements placed upon the property after June 25, 1952, on the ground that no prior approval was given to the corporation to make such improvements. The record shows that no prior approval was given for the placing of improvements after that date. However, the court found:

> "That it was unnecessary under the law for Appellant to make application to place the improvements on the land in question since they were improvements reasonably calculated for the use or purpose for which the land was leased, to-wit: commercial purposes."

A.R.S. § 37–321, subsection A, provides:

> "If a lessee, permittee or other person having a legal interest in state lands, other than a holder of a certificate of purchase, desires to construct or make improvements upon or use the lands for purposes other than provided in the lease or permit, he shall first file with the state land department an application for permission to construct or make the improvements or use for such other purposes. * * *".

This section further provides that where an approval is required and is not allowed, on expiration or cancellation of the lease, such improvements should be forfeited and become the property of the state. A.R.S. § 37–321, subsection A, makes exception to the requirement of prior approval where a lessee desires to construct or make improvements upon or use the lands for purposes provided in the lease or permit.

The corporation contends that the improvements on the property in the instant case were for the use of the land and for purposes provided in the lease, and that obtaining of such approval was not necessary. The finding of the lower court was in accord with this contention. The lease was titled "COMMERCIAL PURPOSES" and provided:

"(1) THAT IT IS FURTHER UNDERSTOOD AND AGREED THAT THIS lease is issued for park purposes only."

 The application for the lease was accompanied by a letter setting forth in detail the purposes of the lease and the improvements desired to be made on the premises, as well as the improvements already on same. It was undoubtedly the intention of the legislature in enacting A.R.S. § 37–321 to restrict and prevent a lessee from putting expensive improvements on the leased premises for which he must be reimbursed by a subsequent purchaser or lessee, but which would be of little use for the purposes for which the land would normally be leased. In like manner, the state is not obligated to pay for expensive and unanticipated improvements when the land is taken over for its use. This is limited, however, in that it does not apply in cases where the improvements are reasonably necessary for the purposes provided for in the lease.

 This exception to the requirement of prior approval was placed in A.R.S. § 37–321 to prevent the necessity of a lessee from having to obtain permission for those things which were essential to the carrying out of the lease; such as in an agricultural lease—the placing of a ditch or clearing and levelling the land to place it in a state of cultivation. It is the duty of this court to give a reasonable interpretation of the statute—one which will protect the state, but at the same time will not require a lessee to go to the commissioner for approval of every small improvement placed upon the premises which is essential to the carrying out of the lease. The facts in the instant case clearly show, as stated in the letter accompanying the application for the lease, the purpose of the lease and that the improvements were necessary to carry out that purpose. Hence, approval was not required.

The land department also contends the trial court erred in reversing the finding that the improvements were of no value. Improvements are defined in A.R.S. § 37–101 as follows:

"10. 'Improvements' means anything permanent in character the result of labor or capital expended by the lessee or his predecessors in interest on state land in its reclamation or development, and the appropriation of water thereon, which has enhanced the value thereof."

 The above statute points out that a primary factor to be considered in evaluating improvements is their enhancement of the value of the land. Schley v. Vail, 11 Ariz. 226, 95 P. 113.

A.R.S. § 37–322 provides three specific valuations that should be considered in arriving at the value of improvements placed on the land after June 25, 1952, as follows:

"A. Improvements placed on state lands prior to June 25, 1952 shall be appraised in accordance with the law in effect at the time the improvements were made. Improvements placed upon state lands after June 25, 1952, including water rights, when the owner thereof is entitled under law to reimbursement for the improvements, shall be appraised as follows:

"1. Improvements, except clearing and leveling land for agricultural purposes,

eradication of noxious growth on grazing lands, and irrigation or other district assessments, shall be appraised at the time the appraisal is made on the following basis:

"(a) The condition of the improvements.

"(b) The current value.

"(c) Their suitability for uses ordinarily made on the lands on which they are located at the time the improvements were made."

As one can readily see, this statute provides no formula in applying the three specific standards set out therein. This section does not substantially change the prior method of valuing improvements, but merely sets out three standards which should be considered in conjunction with the enhancement of the value of the land. The land department found the improvements did not enhance the land, as they had no value for that particular use to which they had previously been put. This theory is erroneous. The fact that these buildings have no use for that one particular purpose is not determinative of the question. This court has recognized that a wide variation exists in the opinions of experts as to value, and that many various appraisal processes are used for the determination of value. Board of Regents of the University and State Colleges of Arizona v. Cannon, 86 Ariz. 176, 342 P.2d 207; County of Maricopa v. Shell Oil Co., 84 Ariz. 325, 327 P.2d 1005. The unique circumstances of the instant case caused the trial court to be presented with a complex fact situation necessitating the consideration of a great number of relevant factors. The trial court heard voluminous evidence touching on every phase of valuation, including cost, repair cost, replacement cost, depreciation, use, future use for park purposes, etc. This court will uphold the trial court's findings whenever they are supported by sufficient evidence. Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370.

The testimony of the land commissioner was to the effect that the improvements were of no value because the property was not being used for the purposes for which it had been previously leased. The land commissioner also gave this as one of the reasons for cancelling the lease. However, his chief reason was, as he stated, that

"* * * [T]he Parks Board was very anxious to get that section of land into the Park system and great stress was made by representatives of the Secretary of Interior's Office to exchange that and make it available for the overall Park system up there, and also I figured it was, for the best interest of the State to co-operate with the Federal Government on the basis of this congressional action that had been taken in 1958."

He further testified that the Parks Service "* * * were trying to acquire State and individual land within an area comprising a terrific acreage in this part. * * * For the Painted Desert Park, or whatever the official name is," and that he considered it necessary for the National Park System.

J. Leslie Hansen, an expert appraiser who testified for the land commissioner, stated that he had previously appraised the improvements for the United States Parks Service in 1956, and that he estimated their value at $13,000, or perhaps $16,000 at that time. The finding of no value was not in accord with the letter from the superintendent of the Petrified Forest National Monument, which recognized the improvements had value, and stated the park service would purchase the improvements "for an amount based on its fair appraisal value."

The appraisal report by Mr. Hansen, admitted in evidence on behalf of the land department, disclosed that there was a speculative land boom in the area at that time. Land that was selling at from $2.50 to $5.00 an acre within the last two years increased to prices ranging from $50 to $200 per acre sold on "easy terms." Such rapid development in the local economy must necessarily have its effect on the value of permanent improvements presently existing on the property. Although the highway had been changed, so had the nature,

of the local economy, and there was a possibility that the improvements might be put to an alternative use to adapt to these changing conditions.

 The evidence showed · that this property had one of the best sites for viewing the Painted Desert. Under this state of facts, this court is not in a position to say that the corporation did not make the application in good faith and with the objective of persuading the highway department to provide an access to the property and using it for the purposes stated in the lease application. This court has held that under a proper presentation of facts an abutting owner has definite rights in regard to ingress or egress. State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988. The lower court was justified in finding from all of the evidence—including the increase of rent from $19.50 to $1,000—that the improvements on this property enhanced its value.

 We are then brought to the question of whether the lower court placed the proper value on the improvements. The court received in evidence a great deal of testimony touching on many factors to be considered in evaluating the improvements. We are unable to say that its method of computation was not according to law. It is not the province of this court to disturb the findings of the trial court where there is substantial evidence· to support them. Nash v. Goor, 94 Ariz. 316, 383 P.2d 871. In the instant case, two appraisers for the corporation testified that the improvements were worth approximately the value found by the court, after allowance had been made for depreciation. The trial court's findings are reasonably supported by the evidence, and will not be disturbed on this appeal.

 The land department contends that the trial court erred in finding that the walk-in box and buried pipeline were removable improvements. The record shows that it would take a substantial effort, and involve some damage to other property, to remove these items. The superior court on trial de novo can overrule the land department's decision if it is contrary to the evidence. Ehle v. Tenney Trading Co., supra. The evidence in the instant case shows that a wall of a building would have to be torn down in order to remove the walk-in box. The pipeline has been buried in place for several years. In the light of these facts, we see no error in the lower court's finding that the pipeline and the walk-in box were. permanent improvements, and thus if otherwise qualified, were proper. subjects for appraisal.

The land department raises the question of the propriety of a judgment against the State of Arizona in this proceeding. We agree that the decision of the lower court and this court must follow the procedures set forth in A.R.S. § 37-214. · It is· provided therein, under subsection A, that "An appeal from a final decision of the state land commissioner relating to * * '* improvements may be taken to the board of appeals * *. *." Under subsection D it is provided that "[a]n appeal from a final decision of the board of appeals or a final decision of the commissioner not relating to * * * appraisal of * * * improvements may be taken by the commissioner or any person adversely ·affected by the decision to the superior court * * *." . Subsection E provides "The appeal ·shall ·be heard de novo * *. * and the court * * * shall either· affirm, reverse or modify the decision appealed·. from." It further provides that such decision may be appealed to the supreme court in 'the manner ·appeals are ·allowed 'to' the 'court' from other final judgments in civil actions. The trial court is therefore limited to affirming, reversing or modifying the decision.

There were two appeals to the lower court. The first was from a decision denying the renewal of the lease. The lower court affirmed the land commissioner's decision canceling the lease, but held it was "without prejudice however, to appellant's right to institute any appropriate action for damages for any loss sustained by appellant

flowing from the land commissioner's acts resulting in appellant's loss of access to the leased premises prior to the termination of said lease." This portion of the lower court's decision was not appealed; however, we agree that these proceedings cannot in any way forego any claim or right of action that Painted Desert or any other individual may have for the failure of the land commissioner or the land department to make provision for egress and ingress to this property in the giving of the easement for a right-of-way. We do not here pass upon those rights.

The appeal to this court was from the second appeal to the lower court, which in turn was from the decision of the board of appeals affirming the decision of the land commissioner which found the improvements of no value. The decision of the land commissioner fixing the value of the improvements followed his decision denying the renewal of the lease in which he said:

"VII. Painted Desert Park has placed improvements on subject property for which reimbursement should be made in conformity with law.

\* \* \* \* \* \*

"IT IS FURTHER ORDERED that an appraisal be made forthwith by the State Land Department to establish the present market value of any reimbursable improvements existing on land described hereinabove so that the former lessee can be properly reimbursed."

■ As stated, the proceedings of the land commissioner were for the purpose of making a decision fixing the value of the improvements for reimbursements "to be made in conformity with law." The appeal to the board of appeals and to the lower court was made by authority of A.R.S. § 37-214. The effect of the decision of the lower court changing the value of the improvements established their value at the amount set by the court. In legal effect, the lower court's decision which reversed the board of appeals and the land commissioner and fixed the value of the property at $48,000, established the value of the property at that amount just as though the land commissioner had fixed that value in the decision appealed from, with payment to be made in accordance with that finding. Otherwise, A.R.S. § 37-214 would be a nullity. The decision of the trial court must necessarily be limited to the proceedings provided for in A.R.S. § 37-214. Arizona Corp. Comm. v. Fred Harvey Transportation Company, 95 Ariz. 185, 388 P.2d 236.

We hold the superior court properly reversed the decisions of the land commissioner and the board of appeals fixing the improvements at no value. The decision of the court of appeals is vacated. The judgment of the superior court is modified and limited to fixing the value of the improvements. That part of the judgment fixing the value of the improvements at $48,000 is affirmed.

BERNSTEIN, C. J., and STRUCK-MEYER, UDALL, and LOCKWOOD, JJ., concur.