807 P.2d 1119

HAVASU HEIGHTS RANCH AND DE-
VELOPMENT CORPORATION, an
Indiana corporation, Plaintiff–Appel-
lant,

v.

DESERT VALLEY WOOD PRODUCTS,
INC., an Arizona corporation; State
Land Department of the State of Ari-
zona; and Jean Hassell, State Land
Commissioner, Defendants–Appellees.

No. 1 CA–CV 89–274.

Court of Appeals of Arizona,
Division 1 Department A.

Dec. 20, 1990.

Review Denied April 23, 1991.

Gammage & Burnham by Fred Ferguson, Jr. and James A. Craft, Phoenix, for plaintiff-appellant.

Robert Corbin, Atty. Gen. by Theresa M. Craig, Asst. Atty. Gen., Phoenix, for defendants-appellees State Land Dept. and Jean Hassell, State Land Com'r.

## OPINION

LANKFORD, Judge.

Havasu Heights Development Corporation (Havasu Heights) appeals from a superior court judgment affirming two orders of the state land commissioner involving applications to lease state trust lands. After reviewing the record under the Administrative Review Act, A.R.S. §§ 12–901 to 12–914, the superior court found that there was no abuse of discretion by the agency. We affirm the superior court's judgment.

### I.

Havasu Heights began leasing the 529.70 acres of state land which are the subject of this appeal in 1966. The property is located near Lake Havasu City and is largely undeveloped except for a mobile home park of approximately twenty acres and an industrial area of approximately thirty-six acres. The land department renewed the lease as commercial lease number 03–781 for a second ten-year term, which expired in 1986.

Prior to the expiration of lease 03–781, the land department, Havasu Heights and others were involved in disputes concerning certain subleases by Havasu Heights. To resolve these disputes, Havasu Heights and the land department entered into a stipulation, which was approved by an order of the deputy state land commissioner in 1981. In the stipulation, the land department agreed not to unreasonably withhold its approval of a lease renewal application by Havasu Heights. The department also acknowledged that Havasu Heights was entitled to reimbursement for various improvements upon the cancellation, surrender or relinquishment of its lease.

Shortly after Havasu Heights applied to renew its lease, Desert Valley Wood Prod-

ucts, Inc. (Desert Valley) filed an application to lease a portion of the same property. Desert Valley had been a sublessee of Havasu Heights and sought a lease directly from the state. A hearing officer concluded a hearing on the competing applications, and Robert K. Lane, then state land commissioner, approved the hearing officer's recommendation to lease 3.65 acres to Desert Valley. Lane entered a final order in October 1986. Havasu Heights appealed to the superior court from the commissioner's decision, and sought a declaratory judgment that it was entitled to lease the entire acreage.

In April 1987, the land department scheduled an administrative hearing to address Havasu Heights' renewal application for the remaining 526.05 acres. The department also filed a motion to dismiss the declaratory judgment count in the superior court action. The court denied the motion to dismiss and ordered the department to conduct a hearing within 45 days.

Following a hearing conducted in July 1987, the hearing officer recommended that, because the land was "under consideration for urban planning and Havasu Heights does not appear to represent the type of developer that could achieve the highest and best use of this parcel, it is not in the best interest of the Trust to renew this commercial lease in its entirety." He also recommended that the department consider granting Havasu Heights a lease to that portion of the property on which the mobile home park is situated if Havasu Heights would agree to upgrade the facilities. Further, the decision provided that certain improvements are reimbursable under A.R.S. § 37–293. In 1988, M.J. Hassell, then state land commissioner, entered a final order approving the hearing officer's recommendations.

Following denial of its motion for rehearing of the latest order, Havasu Heights appealed to the superior court. This appeal was consolidated with the prior appeal from the 1986 order. After considering the parties' respective motions for summary judgment, the superior court affirmed both

orders and Havasu Heights timely appealed to this court.

Havasu Heights contends on appeal that the superior court should have reversed the orders of the land commissioner because: 1) the department prejudged the renewal application; 2) the orders violate the parties' 1981 stipulation; 3) the department abused its discretion by cutting off trust revenues; 4) the 1988 order denies Havasu Heights immediate reimbursement for improvements it had made to the property; and 5) the 1988 order arbitrarily ignores parcels adjacent to the mobile home park.

## II.

■ When an administrative decision is appealed to the superior court pursuant to the Administrative Review Act, A.R.S. §§ 12–901 to –914, the superior court decides only whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Ethridge v. Arizona State Board of Nursing*, 165 Ariz. 97, 796 P.2d 899 (App.1989); *DeGroot v. Arizona Racing Comm'n*, 141 Ariz. 331, 686 P.2d 1301 (App.1984). This court reviews the superior court's judgment to determine whether the record contains evidence to support the judgment and, in doing so, we reach the underlying issue of whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Carley v. Arizona Board of Regents*, 153 Ariz. 461, 737 P.2d 1099 (App.1987).

■ Havasu Heights argues that this court should review the record in a light most favorable to Havasu Heights because this is an appeal from summary judgment. However, this argument confuses the standards of review in appeals from summary judgments and appeals under the Administrative Review Act.

That the superior court made its determination by summary judgment does not change the nature of an appeal under the Administrative Review Act. There was no trial *de novo* in the superior court, and the superior court judge did not act as the trier of fact. The court based its decision on a review of the record in the administrative

proceeding and on the parties' legal arguments. In appeals taken under the Administrative Review Act, neither this court nor the superior court weighs the evidence. *Plowman v. Arizona State Liquor Bd.*, 152 Ariz. 331, 732 P.2d 222 (App.1986). In reviewing factual determinations, our respective roles begin and end with determining whether there was substantial evidence to support the administrative decision. *Id.; Sundown Imports, Inc. v. Arizona Dep't of Transp.*, 115 Ariz. 428, 565 P.2d 1289 (App.1977).

The question whether substantial evidence supports the state land commissioner's order does not raise material issues of fact; it presents a question of law. *See Milton v. Harris*, 616 F.2d 968 (7th Cir. 1980); *Beane v. Richardson*, 457 F.2d 758 (9th Cir.1972), *cert. denied*, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); 6 *Moore's Federal Practice* ¶ 56.17[3] at 56-363 (2d ed. 1988). In *Milton v. Harris*, the court stated: "[I]t is of course mere sophistry to argue that the material issue of fact is whether substantial evidence exists. One might just as well say that summary judgment is never proper because there is always a dispute over whether a material issue of fact exists." 616 F.2d at 975, n. 10.

This court independently reviews questions of law. *See Carley v. Arizona Board of Regents*, 153 Ariz. at 463, 737 P.2d at 1101. Therefore, we make our own determination of whether substantial evidence supported the agency's decision.

### III.

We first examine the claim that the department prejudged the application and therefore was too biased to render a fair decision.

Due process of law contemplates a "fair trial in a fair tribunal." *United States v. Superior Court*, 144 Ariz. 265, 280, 697 P.2d 658, 673 (1985) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)). The concept of "bias" in an administrative hearing has several meanings. One commentator has identified five types of bias: the decision mak-

er's personal attitudes toward a party, prejudgment of questions of law or public policy, prejudgment of legislative facts that help establish law or policies, advance knowledge of adjudicative facts, and an interest in the outcome of the decision. Davis, 3 *Administrative Law Treatise* § 19:2, at 371 (2d ed. 1980). *See generally id.* at §§ 19:2 to 19:6 (comparing and analyzing the types of bias which require disqualification).

■ Courts have developed certain principles to draw the line between those types of bias which require the disqualification of administrators as adjudicators and those which are not disqualifying. A previously announced position about law or policy is not a disqualification for the exercise of judicial power. *See United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, (1941). There is a "presumption of honesty and integrity of those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 724 (1975). To show disqualifying prejudgment, a claimant must demonstrate that the mind of the decision maker is "irrevocably closed" on the particular issues being decided. *See Federal Trade Comm'n v. Cement Institute*, 333 U.S. 683, 701, 68 S.Ct. 793, 803, 92 L.Ed. 1010, 1034 (1948).

■ If a claimant demonstrates prejudgment of the *specific facts* that are at issue, then disqualification may be warranted. *See Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583 (D.C. Cir.1970); *Staton v. Mayes*, 552 F.2d 908 (10th Cir.1977), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). However, that the agency is exposed to facts during the performance of its statutory functions does not necessarily disqualify it from adjudicating. *Hortonville Joint School Dist. v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976); *Withrow v. Larkin, supra. See DeGroot v. Arizona Racing Comm'n, supra* (agency's receipt of results of investigations does not violate due process). *See generally* Stein, Mitchell and Mezines, 4

*Administrative Law,* § 35.03[1], at 35–29 to 35–32 (1989); Davis, *supra* at § 19.4, at 382–89 (both identifying and discussing cases in which distinctions are made between knowledge acquired in the course of daily administration of an agency and prejudgment of adjudicative facts).

■■■■ Havasu Heights argues that the administrative proceedings violated due process because the department and the commissioner had already decided not to grant the renewal application. In support of its argument, Havasu Heights points out that James Schwartzmann, then director of the land department's commercial leasing division, testified at the 1987 hearing that Commissioner Lane had decided prior to the 1986 hearing that the lease should not be renewed. Havasu Heights also relies on various internal department memoranda as evidence of "prejudgment." This evidence includes a memorandum in which Schwartzmann recommended that the department renew Havasu Heights' lease only for the property on which the mobile home park is situated. Havasu Heights is correct in noting that the commissioners' final decisions closely track the recommendations of department staff and the initial decision of Commissioner Lane.

However, an agency head may make an initial decision in his administrative capacity which later becomes an issue in an administrative hearing. That circumstance alone does not preclude the agency head from serving as an adjudicator, particularly when he is the only person authorized by statute to make the final decision. In *De-Groot v. Arizona Racing Comm'n,* 141 Ariz. at 341, 686 P.2d at 1311, this court stated:

> Of course in any agency proceeding in which the agency occupies dual investigative and adjudicative capacity, it will be necessary for the agency to receive the results of investigations, to make preliminary decisions or approve the filing of formal charges, and then to participate in the resulting hearings. This

type of procedure does not violate due process of law.

141 Ariz. at 341, 686 P.2d at 1311 (citations omitted).

The state land commissioner is exposed to non-adjudicated facts. He or she is responsible for administering state trust lands for the benefit of the state. *Lassen v. Arizona ex rel. Arizona State Highway Dep't,* 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967). In planning for the future of trust lands, the commissioner undoubtedly will learn facts about trust property, including evaluations of lessees and proposals for alternative uses of the property. Realistically, the commissioner must receive data from department staff to assist the planning process. If familiarity with staff opinions critical of a lessee's performance were to disqualify the commissioner from deciding lease renewals, then the commissioner could not fulfill his or her statutory duties to administer the trust lands.

Although both commissioners had been informed of the department's institutional opinion that renewal would be unwise, the record does not indicate that Commissioner Lane's preliminary decision about this particular lease was final and irrevocable. Nor does it demonstrate that Commissioner Hassell had made any decision, even a tentative one, prior to the 1987 hearing.

The commissioners' decisions were based on the recommendations of the hearing officers, as to whom there is no claim of bias.[1] The hearing officers based their recommendations on evidence presented at the hearings. The record of these hearings contains substantial evidence presented by the department in support of its position. In addition to the department's evidence, Desert Valley presented evidence to support its claim that the land department would benefit by leasing to it directly rather than through a sublease from Havasu Heights.

In sum, the commissioners adopted recommendations by unbiased hearing offi-

---

1. The hearing officers' decisions reveal that they did not accept all of the department's claims regarding Havasu Heights.

cers, and those recommendations are supported by the record. Although there is some evidence that the commissioners acquired knowledge of facts outside the hearing process, the record supports the superior court's determination that Havasu Heights failed to show that the commissioners prejudged the renewal application.[2]

### IV.

Havasu Heights argues that the department and the commissioners erroneously concluded that the 1981 stipulation was not enforceable after the expiration of the lease in 1986 and therefore improperly ignored the stipulation.

■ The 1986 order does not refer to the stipulation. Presumably, Havasu Heights believes that the order violates the 1981 stipulation simply because the order grants a lease to Desert Valley for a portion of the land previously leased by Havasu Heights.

The 1988 order provides in part:

> The validity of the 1981 Stipulation and Order pertains to its use as an agreement reached between Havasu Heights and the Department to resolve disputes existing at the time the agreement was made. It does not and cannot bind the State Land Commissioner to renew the lease beyond its ten-year term ...

We find neither error in this statement nor any conflict with the stipulation. The stipulation itself makes renewal of the lease subject to "applicable law":

> The Department hereby waives any basis for cancellation of lease 781 existing prior to the effective date of this Settlement and Order, and agrees that renewal of Lease 781, *as set forth in the provisions thereof and other applicable law, shall not be unreasonably withheld.*

(Emphasis added).

■ The lease also provides that it is subject to "all the provisions and requirements thereto, which are found in the various Acts of the Legislature of the State of Arizona...." Moreover, even without an express acknowledgment in the stipulation and lease, the laws of this state are a part of every contract. *Huskie v. Ames,* 139 Ariz. 396, 678 P.2d 977 (App.1984).

The applicable laws forbid a lease exceeding ten years in duration. Section 28 of the Enabling Act,[3] Article 10, § 3 of the Arizona Constitution[4], and A.R.S. § 37–281(A)[5] prohibit an agreement to lease beyond ten years, with exceptions not applicable here.[6] In addition, the lease and stipulation are subject to A.R.S. § 37–132, which requires the state land commissioner to make decisions with respect to the renewal and granting of leases in the best interests of the state and for the benefit of the trust beneficiaries.

We also note that the 1981 stipulation did not provide for automatic renewal of the lease. On the contrary, it provided for renewal subject to existing law and promised only that renewal would "not be unreasonably withheld." We therefore reject

---

2. Havasu Heights also argues on appeal that the superior court should have conducted an evidentiary hearing to determine whether the land commissioners were biased. The complaints in superior court neither set forth grounds for a trial *de novo* under A.R.S. § 12–910 nor requested a trial *de novo.* Havasu Heights instead alleged that undisputed facts in the record established bias as a matter of law. It asked the superior court to grant summary judgment on various grounds, including its assertion of bias.

3. The Enabling Act, § 28, 1 A.R.S., provides in part, "Said lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction ... Nothing herein contained shall prevent: (1) the leasing of any of the lands referred to in this section, in such

manner as the Legislature of the State of Arizona may prescribe, for grazing, agricultural, commercial, and domestic purposes, for a term of ten years or less...."

4. Article 10, § 3, paragraph one authorizes leases of state lands "for grazing, agricultural, commercial and homesite purposes, for a term of ten years or less, without advertisement ..."

5. A.R.S. § 37–281(A) provides for leases "for a term of not more than ten years for agricultural, grazing, commercial and homesite purposes, without advertising."

6. For example, a lease may exceed a ten year term after advertising and a public auction. A.R.S. § 37–281.02.

the contention that the stipulation obligated the commissioner to renew the lease.

■ Havasu Heights also contends that the commissioners' orders breach certain specific provisions of the stipulation. Havasu Heights first argues that the department violated the stipulation by introducing evidence at the hearings concerning events that occurred before the 1981 stipulation. However, the stipulation prohibited the department from using alleged pre–1981 violations only as a basis to *cancel* the lease. This lease was not cancelled: it expired in 1986. The terms of the stipulation did not bar the department from considering Havasu Heights' past performance as a tenant in deciding a *renewal* application.

■ Havasu Heights also argues that the department breached its promise not to unreasonably withhold renewal. Havasu Heights alleges that the final orders were unreasonable and that the delay in making the decisions was unreasonable.

The record shows that the orders were reasonable. Ample evidence supports the decisions to lease a portion of the parcel to Desert Valley and to deny renewal to Havasu Heights. At the 1986 hearing, Gordon Johns, the primary shareholder of Desert Valley, testified about his dissatisfaction with Havasu Heights as a lessor. His testimony supports the hearing officer's conclusion that Desert Valley had an incentive to make the property a viable business and would be a better tenant. Moreover, the record shows that leasing directly to Desert Valley would ease the department's administrative burdens.

Evidence presented at the 1987 hearings also revealed that Havasu Heights had left most of the property undeveloped, made late rental payments, poorly maintained facilities and lacked the financial capacity to develop the property.

The evidence also indicated that Lake Havasu City had submitted an application to the land department to classify the property as suitable for urban planning, and that renewing the entire lease for ten more years would inhibit development. Although contrary evidence suggests that the state could benefit by collecting lease revenue pending reclassification, neither the superior court nor this court may weigh the evidence and substitute our judgment for the agency's. *Plowman v. Arizona State Liquor Bd.*, 152 Ariz. at 335, 732 P.2d at 226. In sum, the record contains substantial evidence for the commissioner's decision not to renew the entire lease.

■ We turn next to the contention that the department breached the stipulation by unreasonably delaying its decision. The record supports the conclusion that the delay was not unreasonable. The initial hearing on Havasu Heights' renewal application occurred four months after the lease had expired. Havasu Heights was permitted to continue to occupy and use the land pending action on its application as provided by department rules. *See* A.A.C. R12–5–107.

Because a competing application had been filed, both applicants filed supporting memoranda and responses. Given the time needed to submit, process and analyze these documents, the delay in scheduling the 1986 hearing was not excessive.

The recommendation of the hearing officer and the commissioner's order approving that recommendation were issued in October 1986. However, the order determined the rights to lease only 3.65 acres of the total 529.70 acres included in the former, expired lease. Havasu Heights filed a motion for rehearing in late November which was denied in early January 1987.

Havasu Heights blames the delay in deciding its application to lease the remaining acreage on arbitrary inaction by the department. In April 1987, the department noticed a hearing to decide whether Havasu Heights could renew its lease on the remaining property.

However, instead of requesting a hearing or decision on the remainder of its application, Havasu Heights appealed the order in January 1987 and asked the superior court for a judgment declaring that it was entitled to renew its lease of the entire 526.70 acres. Moreover, Havasu Heights argued in the superior court that because

the entire matter was in the superior court, the department could not act on a lease of the remaining acreage.

The record supports the conclusion that the periods of delay were either not excessive or were attributable in part to Havasu Heights. The superior court did not err by denying relief to Havasu Heights.

▇▇▇ Finally, we consider whether the department violated that portion of the 1981 stipulation dealing with improvements. The stipulation acknowledges that Havasu Heights owns certain improvements on the property and provides that "any reimbursement therefore upon the cancellation, surrender or other relinquishment of Lease 781 shall be made to Havasu Heights or its successors or assigns." However, the lease was not cancelled; it expired by its own terms in 1986. After the lease expired, there was nothing to cancel, surrender or relinquish. Even assuming *arguendo* that Havasu Heights could "surrender" or "relinquish" an expired lease, it has not done so, and instead continues to assert that it is entitled to renew the lease. Reimbursement for improvements upon the expiration of the lease was governed not by the stipulation, but by the controlling statutes. We consider below in Part VII of this opinion whether the department violated these statutes by not immediately compensating Havasu Heights.

## V.

▇▇▇ Havasu Heights contends that Commissioner Hassell abused her discretion in denying the renewal application because the decision eliminated lease revenue to the trust.

The state land commissioner has a duty to maximize the financial benefits flowing from the trust. *See Gladden Farms, Inc. v. State*, 129 Ariz. 516, 633 P.2d 325 (1981). However, the commissioner also has discretion to deny renewal of a lease "in the best interest of the state." A.R.S. § 37–291(B). *See Tanner Companies v. Arizona State Land Dep't*, 142 Ariz. 183, 192–93, 688 P.2d 1075, 1084–85 (App.1984). The question presented by Havasu Heights is whether the sole or predominant interest of the state is the maximization of lease revenue.

Havasu Heights argues that the commissioner was obligated to lease to it in the absence of an alternative income producing use. It relies on *State Land Dep't v. Painted Desert Park, Inc.*, 102 Ariz. 272, 428 P.2d 424 (1967), in which the Arizona Supreme Court stated in *dictum:*

> The only situations which would normally justify this discretionary refusal are where the land is leased to another, sold to the lessee or another, or taken over by the state for its own use. It is hard to envisage a situation where there would not be an abuse of discretion from the refusal to renew a lease if the lands in question were not to be put to one of the alternative uses enumerated above.

102 Ariz. at 278, 428 P.2d at 430.

Although the court in *Painted Desert Park* was unable to foresee a situation in which foregoing lease revenue would be in the state's best interest, that case was decided before the Legislature enacted the Urban Lands Act, A.R.S. §§ 37–331 to 37–338. That act authorizes the commissioner to reclassify lands suitable for urban development and prepare a general plan for development in cooperation with local planning authorities. *See* A.R.S. §§ 37–333 to 37–334. Thus the commissioner now has land management alternatives which did not exist when the court decided *Painted Desert Park.*

At the time the commissioner decided not to renew Havasu Heights' lease, the land department had not selected a particular alternative use. However, Lake Havasu City had requested reclassification of the land under the Urban Lands Act, and the department considered the possibility that development would be slowed if a lease were to encumber the property.

The commissioner may legitimately consider alternate future uses of state land. A higher future use would fall within the "best interest" standard established by the statute. In *Williams v. Greene*, 95 Ariz. 378, 390 P.2d 907 (1964), the Arizona Supreme Court reversed a judgment uphold-

ing a lease renewal in the face of a competing lease application. The court stated:

> [T]he vital question [is]: What action would best serve the interests of the State and its people? ...
>
> It is apparent from the record that the commissioner did not consider the best interest of the State but felt bound by the Defendant's preferential right to the lease. It also appears that the trial court gave undue consideration to the rental value of the property. *Starting with the premise that in leasing State land the benefits to be received by the State and its people are of primary importance, there are many factors to be considered in addition to the rental value.* [Citation omitted.] This is particularly so where the land to be leased has been reclassified....
>
> The financial interests of the State are inseparable from the full development and use of lands reclassified from grazing to commercial, suitable for residential or business purposes.

95 Ariz. at 383–84, 390 P.2d at 911 (emphasis added).

Lease revenue is not the sole factor which governs the department's decision. The Legislature chose a broader, "best interest" standard that permits other considerations, such as the public benefits flowing from employing state land in uses of higher value than would the applicant for a lease.

In this case, the land was adjacent to a developing urban area. Reclassification had been requested. The department was concerned with long range development, not merely the availability of a relatively small amount of immediate rental income. This is a legitimate consideration under the "best interest" standard. We also believe that the department may decline to renew a lease with an undesirable lessee who was unable to develop the land to its fullest potential. The "best interest" standard does not require blind adherence to the goal of maximizing revenue at the cost of contracting with an irresponsible lessee or hindering important alternate uses.

Havasu Heights also relies on *Havasu Heights Ranch and Development Corp. v. State Land Dep't,* 158 Ariz. 552, 764 P.2d 37 (App.1988) to support its claim that the commissioner abused her discretion. That decision upheld the commissioner's authority to grant "holding leases" on state lands. Such leases prohibited any actual use of the leased land. In so holding, we said that the commissioner may lease to generate income during a "waiting period" while the department determined the most appropriate ultimate use. We then stated in *dictum:* "In fact, *not* leasing the land under these circumstances may have been a violation of the commissioner's duties to maximize financial benefits to the trust." *Havasu Heights,* 158 Ariz. at 557, 764 P.2d at 42 (emphasis in original). The *dictum* in *Havasu Heights* does not dictate the outcome here. Moreover, no holding lease is involved in this case. Our statement does not support the broad proposition that the commissioner cannot meet the best interest standard when she forgoes immediate revenues in favor of other public benefits which she has determined are more substantial.

We cannot say that the failure to generate immediate income by declining to renew the lease was an abuse of discretion under all of the circumstances. This is precisely the type of decision which is best left to the expertise and discretion of the commissioner.

## VI.

 Havasu Heights contends that the portion of land considered for lease renewal for the mobile home park should have included two additional parcels. The 1988 order denied renewal of Havasu Heights' lease application "except for that portion described as the mobile home park, Parcels, C, D, E, and F, which will be considered for lease by the Department." Havasu Heights argues that parcels A and B should also have been considered for lease to Havasu Heights because at one time the department had considered all of these parcels as a unit.

Havasu Heights concedes that these parcels are not part of the mobile home park,

but are adjacent to it. Havasu Heights' own application indicates that it considered these parcels separately for potential future commercial development. Havasu Heights has not persuaded us that the department is irrevocably tied to a prior treatment of these parcels as one unit. The superior court correctly decided that the hearing officer and the commissioner did not abuse their discretion by concluding that these parcels could be treated separately.

## VII.

Havasu Heights argues that the 1988 order should have provided for immediate reimbursement for improvements made to the property. The order provided that reimbursement would be made under A.R.S. § 37–293. That statute contemplates that a lessee of state lands shall be reimbursed not by the state but by a succeeding lessee. However, there was no succeeding lessee for the land except the 3.65 acres leased to Desert Valley.

The 1988 order was not incorrect, although the order was incomplete. Arizona statutes provide three means of reimbursement to lessees for improvements: reimbursement by a succeeding lessee under A.R.S. § 37–293; reimbursement by the purchaser of state land at a public auction under A.R.S. § 37–242; and reimbursement by a state agency when it takes over state land under A.R.S. § 37–441.

Havasu Heights contends that the state must immediately reimburse the former lessee in this situation. Its argument is based on federal and state constitutional prohibitions against the taking of property without just compensation and on the statutory provisions relating to use of land by state institutions. U.S. Const. amends. V, XIV; Ariz. Const. art. II, § 17; A.R.S. §§ 37–441 to 37–443.

■ For its statutory argument, Havasu Heights relies principally on A.R.S. § 37–442(C), which requires that the state reimburse a lessee for the value of improvements "upon surrender of the lands to the state ..." A.R.S. § 37–442 does not apply here, however. It applies only to a "state department or institution" which uses the land for its own purposes. A.R.S. § 37–442(A). A state agency which wants to use state land must also comply with an application process. *Id.* The statute does not apply to the land department, which holds this land in trust and is not using it for the department's own purposes.

We conclude that the commissioner's decision not to renew a lease is not a taking of the land by a state agency for its own use, and therefore does not trigger the reimbursement procedure of A.R.S. § 37–442.

We believe that Havasu Heights is correct that the other reimbursement statutes do not provide for immediate reimbursement in this situation. Reimbursement must await a later sale (A.R.S. § 37–242) or lease (A.R.S. § 37–243), for it is the purchaser at sale or the succeeding lessee who is obligated to pay for the improvements.

■ Havasu Heights argues, however, that if the land department delays leasing or selling the property for an indefinite time, the former lessee will be deprived of its property without just compensation. The right to compensation exists only when private property is "taken" by the state. U.S. Const. amend. V; Ariz. Const. art. II, § 17.

However, the state has not "taken" a compensable property interest by deferring compensation. Havasu Heights defines its property interest as ownership of the non-removable improvements that it made on state lands. However, at common law a landlord is not liable to his tenant for the value of improvements voluntarily made by the tenant in the absence of a statute or agreement imposing such liability. *Grizzle v. Runbeck,* 74 Ariz. 92, 244 P.2d 1160, (1952). The lease does not promise reimbursement.

■ Because Havasu Heights has no property interest at common law or by contract, any property interest in the improvements must rest on a statute. Any property right created by a statute is also defined by the statute. Here, the statutes

provide that the right to reimbursement arises only when one of the triggering events occurs—the leasing, selling or taking over for a state agency's use the property on which the improvements are located. Because none of these events have occurred, Havasu Heights does not yet have a compensable interest.

The reimbursement statutes were in existence when Havasu Heights entered into the lease. The statutes were part of the rental contract. *See Huskie v. Ames, supra.* Thus, when Havasu Heights leased the property, it implicitly accepted that it would not be reimbursed until and unless the property were later sold, rented or taken over by a state agency.

The 1988 order provides that reimbursement would occur under A.R.S. § 37–293. It omitted reference to A.R.S. § 37–242. That omission does not diminish Havasu Heights' right to reimbursement under the latter statute if the property were sold later. Moreover, because there is no right to immediate compensation for improvements, the order is not reversible based on its failure to provide for immediate reimbursement.

Our holding does not mean that Havasu Heights will never be reimbursed. The commissioner declined to renew the Havasu Heights lease at least in part because of the potential for imminent development of the parcel. In fact, the record reveals that one month after the superior court had affirmed the commissioners' rulings, the department attempted to sell 26 acres of the land at issue. Lake Havasu City wanted to acquire the land for an airport and had been prepared to bid the minimum price of $312,000 at the scheduled public auction. Such a sale would trigger reimbursement under § 37–242 for any improvements on the portion sold. However, Havasu Heights obtained an order prohibiting this sale in order to preserve the *status quo* on appeal. Thus, it appears that the department could not have taken any action during this appeal that would trigger reimbursement.

We find no error by the superior court in affirming the commissioners' orders. Ac-

cordingly, we affirm the judgment and deny Havasu Heights' request for attorneys' fees under A.R.S. § 12–348.

TAYLOR, P.J., and CONTRERAS, J., concur.