875 P.2d 193

**SAMARITAN HEALTH SERVICES, dba Air Evac, Plaintiff–Appellee,**

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an Agency of the State of Arizona; Dr. Leonard Kirschner, in his capacity as Director of AHCCCS; Arizona Physicians IPA, Inc., an Arizona corporation, Defendants–Appellants.**

**SAMARITAN HEALTH SERVICES, an Arizona corporation, dba Air Evac, Plaintiff–Appellee,**

v.

**ARIZONA PHYSICIANS IPA, INC., an Arizona corporation, Defendant–Appellant.**

Nos. 1 CA–CV 91–0495, 1 CA–CV 91–0568.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 11, 1994.

Review Denied June 21, 1994.

4. We decline to consider this new argument on appeal. *See City of Tempe v. Fleming,* 168 Ariz.

454, 456, 815 P.2d 1, 3 (App.1991).

Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Ron Kilgard, G. Murray Snow, Phoenix, for appellant Arizona Physicians IPA, Inc.

Johnston Maynard Grant & Parker by Logan T. Johnston, Jeffrey C. Brodin, Phoenix, for appellants AHCCCS and Kirschner.

Gammage & Burnham by Richard B. Burnham, Curtis Ullman, Lisa A. Neuville, Phoenix, for appellee Samaritan Health Services.

## OPINION

EHRLICH, Acting Presiding Judge.

The issue presented by this appeal is whether the superior court correctly ruled that the Arizona Health Care Cost Containment System Administration ("AHCCCS") and Arizona Physicians IPA, Inc. ("APIPA") must pay Samaritan Health Services' claim for emergency air transportation services provided to a patient who was a member of Arizona's indigent health-care program. We affirm the court's judgment for the reasons which follow.

### FACTS AND PROCEDURAL HISTORY

Electing not to participate in the federal Medicaid program, the Arizona Legislature developed a cooperative alternative adminis-

tered by AHCCCS to provide medical services to indigent persons. *See* Ariz.Rev.Stat. Ann. section ("A.R.S. §") 36–2901 *et seq.* Under this program, individual health plans bid for and contract with the State of Arizona through AHCCCS to provide covered medical services to eligible persons. Funding for the services furnished by the health plans is supplied by the state and is based on the number of members assigned to each plan. The patient involved in this case was a member of APIPA, a health plan under contract with AHCCCS.

The patient was a 72–year–old woman with diabetes whose right leg had been amputated below the knee at University Medical Center ("UMC") in Tucson. She was admitted to the Casa Grande Regional Medical Center ("CGRMC") after having arrived at its emergency room with complaints of nausea, epigastric pain, abdominal distention and jaundice. The emergency room physician believed that the woman had an obstruction of the common bile duct, and admitted her to control her diabetes and determine whether surgery was required.

On the morning of May 3, 1989, a physician performed an invasive diagnostic procedure on the patient [1] and confirmed that she had an acute obstruction at the top of the pancreas. The physician recommended that surgery be performed that day, to which the patient and her daughter agreed. The patient's son, however, insisted that his mother be transferred to UMC for further treatment. The physician complied and arranged for the patient's transfer from CGRMC's intensive-care unit to a comparable unit at UMC. She informed the patient's family that ground transportation was not appropriate because it was possible that the patient was experiencing life-threatening complications from the earlier procedure. The physician also told the family that AHCCCS would not pay for air transportation because the transfer was due to the request of the patient and her family.

Samaritan Health Services directs Air Evac, a rapid-response, emergency aeromedical transportation service that operates helicopters and fixed-wing ambulance aircraft. The physician called Air Evac on its dedicated emergency line and requested air transportation to UMC.[2] Air Evac was not aware that the patient was being moved due to her family's demand. As requested, it simply "scrambled" a crew and a helicopter immediately departed. The patient arrived at UMC without incident.

Air Evac later submitted a claim for payment, which APIPA denied because its medical director concluded that the transportation, for which Air Evac had not obtained prior authorization, was medically necessary but not emergent. Among the director's reasons were that, at the time of transfer, the patient had normal vital signs and was awake and alert. Air Evac filed a grievance, which APIPA denied. APIPA found that payment had been denied properly because Air Evac had not obtained prior authorization to transport the patient and subsequent medical review revealed that her condition was not emergent.

Air Evac then appealed the APIPA grievance decision to AHCCCS. Following an evidentiary hearing, the AHCCCS hearing officer found that there was no evidence that the patient's transfer to UMC was either an emergency or medically necessary. He decided that, notwithstanding Arizona Department of Health Services ("DHS") regulations which require Air Evac to respond to all requests for emergency transportation received from responsible parties, AHCCCS regulations concerning reimbursement for services rendered to its members governed payment for ambulance services. The hearing officer further concluded that, because Air Evac acknowledged that it had not

---

**1.** The diagnostic procedure was a percutaneous transhepatic cholangiogram involving the insertion of a needle into the liver to fill the duct system with dye so that the ducts would be visible on a radiograph.

**2.** Air Evac has a dedicated emergency line on which dispatchers receive requests for emergen-

cy air transportation. It responds only to emergency requests from law enforcement agencies, fire departments and medical professionals at the emergency medical technician level or above. It does not respond to calls from the general public unless the request is validated by a law enforcement agency or fire department.

sought prior authorization for the transportation, APIPA properly had refused to reimburse Air Evac for the unnecessary emergency air transportation it had provided to the patient. He recommended that Air Evac's grievance be denied.

The hearing officer's recommendation was adopted by Dr. Leonard Kirschner, then director of AHCCCS. Air Evac petitioned the AHCCCS director for a rehearing and review. Dr. Kirschner denied the petition and entered his final decision upholding APIPA's denial of Air Evac's claim.

Air Evac sought judicial review of the AHCCCS director's decision in superior court. It subsequently moved for summary judgment, arguing that, as a matter of law, it was entitled to reimbursement when it responded, as required by DHS regulations, to a physician's request for emergency transportation. Air Evac further argued that AHCCCS regulations do not require prior authorization nor provide for retroactive review of emergency air transportation, and that the patient's condition warranted such air service. AHCCCS[3] and APIPA responded that reimbursement was not authorized under AHCCCS regulations because the patient's air transportation was not medically necessary. They also asserted that Air Evac's obligations under non-AHCCCS law were not relevant to AHCCCS's payment of claims submitted to it. AHCCCS filed a cross-motion for summary judgment.

The superior court entered summary judgment in favor of Air Evac and denied AHCCCS's cross-motion, deciding that the administrative decision was contrary to the law and the evidence. The court found that

> Air Evac *must* answer a call to transport when it is received from the appropriate medical professional or law enforcement agency. They do not have to determine, under the circumstances of this case, whether the transport is an emergency or not. When it's received on "the hot line" they must respond. To require Air Evac to conduct their own investigation and/or inquiry as to whether an emergency exists is not warranted. People could die while this investigation and conclusions are going on. [Emphasis original.]

AHCCCS and APIPA timely appealed the judgment vacating the administrative decision and ordering that Air Evac's claim be paid.[4]

## DISCUSSION

■ On examination of a superior court's review of an administrative decision, we must decide whether there is evidence to support the superior court's judgment; the fact that the court made its determination by summary judgment does not change the nature of our review. *Havasu Heights Ranch and Development Corp. v. Desert Valley Wood Products, Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990). Thus we must determine, as did the superior court, whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Id.; Sanders v. Novick*, 151 Ariz. 606, 608, 729 P.2d 960, 962 (App.1986). We draw our own conclusions as to whether the administrative agency erred in its interpretation and application of the law. *E.g., Havasu Heights*, 167 Ariz. at 387, 807 P.2d at 1123; *Sanders*, 151 Ariz. at 608, 729 P.2d at 962; *Eshelman v. Blubaum*, 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App.1977).

■ The principles of construction for statutes apply to interpreting regulations promulgated by an administrative agency. *Cochise County v. Arizona Health Care Cost Containment System*, 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991). We thus interpret regulations to result in a fair and sensible meaning, giving the words and phrases used

---

**3.** Dr. Kirschner will be included in references to AHCCCS without further specific mention.

**4.** AHCCCS and APIPA each filed a notice of appeal from the superior court's judgment, which was designated by this court as 1 CA–CV 91–495. Later, in response to a motion filed by AHCCCS in which APIPA joined, the superior court vacated its earlier judgment and dismissed the two notices of appeal. The court entered an amended judgment from which AHCCCS and APIPA also appealed, designated as 1 CA–CV 91–568 by this court. Pursuant to a joint motion stating that the appellate case numbers related to the same matter, the cases were consolidated.

their ordinary meanings unless the context indicates otherwise. *Id.*

On appeal, AHCCCS and APIPA maintain that Air Evac is entitled to reimbursement only if the air transportation was due to a medical emergency or was medically necessary. They argue that substantial evidence supports the AHCCCS director's decision that the transportation of the patient in this matter did not qualify as either an emergency service or medical necessity. They further assert that Air Evac's obligations under DHS regulations to respond to an emergency medical situation when requested by an appropriate agency or individual do not create a right for it to receive payment from AHCCCS.

The primary question posed by this appeal, however, is not whether the patient required emergency air transportation or whether the evidence supports the director's determination that the transportation was neither an emergency nor medically necessary. Instead, the dispositive question is who determines when a patient's condition constitutes a medical emergency for the purposes of the provision of and subsequent payment for emergency services under AHCCCS: Is it the patient's physician at the time the physician requests the emergency transportation or is it the health plan under contract with AHCCCS, to which the patient is assigned, and ultimately AHCCCS, in a review done after the service has been rendered?

A pertinent DHS regulation provides that an ambulance service "shall: Respond to all emergency medical situations when correspondingly dispatched by a responsible party." Ariz.Comp.Admin.R. & Regs. ("A.C.R.R.") R9–13–1002(A)(2). Another DHS regulation states that "[a]n ambulance service shall not refuse to transport a patient." R9–13–1415(F)(1).

Emergency ambulance transportation for AHCCCS members is a covered service. A.C.R.R. R9–22–211(A)(1).[5] "The attending physician will determine whether a patient's medical condition requires emergency services." A.C.R.R. R9–22–210(A). Subsection A of R9–22–211 only provides that the ambulance company furnishing the emergency transportation must notify the patient's health plan within five working days of the date of transport; failure to comply with this requirement constitutes cause for denial of payment. A.C.R.R. R9–22–211(A)(2), (3). In clear contrast to emergency transportation, medically necessary transportation service for members must be preauthorized by AHCCCS. A.C.R.R. R9–22–211(B)(1); *see also* A.C.R.R. R9–22–211(E)(1).

The interplay of the regulations demonstrates that the patient's attending physician, not the health plan under contract with AHCCCS or AHCCCS, decides whether an AHCCCS patient requires emergency medical transportation. Once the physician has so decided, the ambulance service called is bound to respond. AHCCCS cannot later refuse payment for that ambulance service.[6]

AHCCCS and APIPA contend that it was Air Evac's responsibility to ascertain if in fact emergency transportation was necessary. However, we have neither been cited nor found any regulation suggesting, let alone requiring, Air Evac to query the attending physician whether a "true emergency" existed. Air Evac personnel should not be asked to question the medical judgment of an attending physician. Indeed, Air Evac's

---

**5.** The AHCCCS regulations provide that "emergency ambulance service" is "[e]mergency transportation by a licensed ambulance or air ambulance company o[f] persons requiring emergency medical services." A.C.R.R. R9–22–101(36)(a). "'Emergency medical services'" are those "provided after the sudden onset of a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could be expected to result in [serious health consequences]." A.C.R.R. R9–22–101(37). Reimbursement for emergency ambulance services "is limited to the cost of transporting patients in a ground or air ambulance to the nearest appropriate provider or medical facility capable of meeting the patient's medical needs, when no other means of transportation is both appropriate and available." A.C.R.R. R9–22–211(A)(1).

**6.** While R9–22–210(A) provides that the AHCCCS administration shall review claims for emergency medical services prior to payment to determine whether the services were justified, that provision applies only to emergency services rendered to eligible non-enrolled individuals. The patient in this case was an enrolled member.

director testified at the administrative hearing that it would not "quibble" and "argue" with a physician's request for emergency air transportation.

AHCCCS and APIPA argue that they have the prerogative under R9–22–211(A)(1) to review and deny Air Evac's claim because payment is limited to the cost of transporting the patient to the nearest medical facility capable of meeting the patient's medical needs, and CGRMC was so equipped. As was said, no regulation required Air Evac to question the motivation behind the request for transportation. Thus, once the physician determined that emergency medical transportation was required, Air Evac had no duty to challenge that decision.

AHCCCS and APIPA finally maintain that Air Evac may choose to make no effort to determine whether air transportation ordered by a physician involves an emergency or is medically necessary and then set rates charged to all patients to spread the cost of the transports for which AHCCCS will not pay. This decision is not, however, within the judicial province to resolve but is a matter of executive and/or legislative determination. We are charged with reviewing the statutes and regulations as pertinent upon Air Evac's challenge, and AHCCCS's cost-shifting argument is not relevant to our decision.

The judgment of the superior court is affirmed.

NOYES and LANKFORD, JJ., concur.