916 P.2d 499

**ST. JOSEPH'S HOSPITAL and Medical Center, an Arizona corporation, Plaintiff–Appellee,**

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM, an agency of the State of Arizona; Leonard Kirschner, M.D., as Director of the Arizona Health Care Cost Containment System Administration; and Maricopa County Health Plan, a department of Maricopa County, a political body of the State of Arizona, Defendants–Appellants.**

No. 1 CA–CV 94–0269.

Court of Appeals of Arizona,
Division 1,
Department C.

April 23, 1996.

Richard M. Romley, Maricopa County Attorney by William F. Molner, Deputy County Attorney, Phoenix, for Defendant–Appellant Maricopa County Health Plan.

Johnston Maynard Grant and Parker, P.L.C. by Catherine Dodd, Phoenix, for Defendant–Appellant Arizona Health Care Cost Containment System.

Gammage & Burnham, P.L.C. by Richard B. Burnham and Cameron C. Artigue, Phoenix, for Plaintiff–Appellee.

**OPINION**

FIDEL, Judge.

This case arises from the denial by the Maricopa County Health Plan ("MCHP")—an Arizona Health Care Cost Containment System ("AHCCCS") contract provider—of a reimbursement claim submitted by St. Joseph's Hospital and Medical Center ("St. Joseph's") for emergency treatment and hospitalization of an MCHP member. MCHP denied reimbursement because St. Joseph's failed to give MCHP timely notice

that it was treating a member of the MCHP plan. The AHCCCS director upheld the denial of reimbursement on administrative review, but the superior court reversed the agency's decision on administrative appeal. On further appeal to this court, we examine the reasons for, and consequences of, St. Joseph's inability to give timely notice. We also examine an AHCCCS rule that permits denial of reimbursement as a consequence of untimely notice, and we consider the factors bearing upon the just exercise of the discretion afforded by that rule.

## BACKGROUND

Jose Luera Sanchez[1] was struck by a motorcycle on June 30, 1989, and admitted to St. Joseph's Hospital as a level I trauma patient, requiring the highest level of emergency care. The patient carried two forms of identification; an Arizona Driver's License identified him as "Jose Luera Sanchez," and a resident alien visa (green card) identified him as "Luera Sanchez, Jose." Both documents combined the patient's father's surname, "Luera," with his mother's surname, "Sanchez." He had signed both cards "Jose Luera," and both contained the birth date March 6, 1929.

When a patient's AHCCCS membership or eligibility is not known, a health-care provider furnishing services to him must contact AHCCCS administration to determine whether the patient is enrolled in an AHCCCS plan. Arizona Administrative Code ("A.A.C.") Rule 9–22–308(B). St. Joseph's did so within thirty minutes of the patient's arrival. If the patient is enrolled, the "provider must notify the member's contractor within 12 hours of the time the member registers for services." A.A.C. Rule 9–22–210(B). The AHCCCS verification unit could not find any record for the patient.

The parties dispute whether St. Joseph's gave AHCCCS the paternal surname "Luera." Neither St. Joseph's nor AHCCCS personnel remember the call. Although St. Joseph's witness testified that St. Joseph's probably gave the full name "Jose Luera

Sanchez," the AHCCCS employee who took the call testified that she recorded only "Jose Sanchez." The AHCCCS witness added that she was Hispanic, understood the traditional order of Hispanic surnames, and would have looked for "Jose Luera" if St. Joseph's had given the full name. It is undisputed that St. Joseph's gave the correct birth date.

When a health-care provider in the position of St. Joseph's discovers that an apparently eligible patient is not registered with an AHCCCS plan, the provider may file a priority application with the county eligibility office in the patient's county of residence. A.A.C. Rule 9–22–308(B). Promptly after its call to AHCCCS, St. Joseph's phoned Maricopa County's eligibility office to request a priority application. Meanwhile, St. Joseph's proceeded to give necessary care.

On July 19, 1989, Maricopa County, acting upon the priority application, found the patient eligible for AHCCCS. But at approximately the same time, the patient's roommate told St. Joseph's that the patient was already enrolled in AHCCCS and a member of MCHP. After confirming the roommate's information in a second phone call to the AHCCCS verification unit, St. Joseph's notified MCHP that its patient was already an MCHP member and was receiving ongoing hospital care.

MCHP approved and paid $1,939.00 for services that St. Joseph's provided after the notification date of July 20, 1989, but denied reimbursement for $34,652.79 in services provided between June 30 and July 19. St. Joseph's filed grievances with AHCCCS, which were informally denied, and then proceeded to formal hearing before an AHCCCS hearing officer.

The hearing officer found that St. Joseph's had given only the maternal surname "Sanchez," not the paternal surname "Luera" or the full name "Luera Sanchez." But the hearing officer also found that, even if St. Joseph's had given the name "Luera" or "Luera Sanchez," AHCCCS would have been unable to identify him as an AHCCCS enroll-

1. The name is an alias that the court and parties have chosen to protect the privacy and confiden-    tiality of the patient.

ee because the patient was incorrectly listed within computer records. The AHCCCS records were mistaken in two respects: "Luera" was spelled "Luira," and the birth date was recorded as March 29, 1920, not March 6, 1929. The mistaken data had been given to AHCCCS by Maricopa County.

Nonetheless, the hearing officer denied St. Joseph's reimbursement, reasoning:

A batter who is thrown out at first base cannot complain that second base is missing. It simply does not matter what information AHCCCS had on hand because the Hospital did not prove that it had reached the stage whereby AHCCCS was required to give it correct information.

The AHCCCS director adopted the hearing officer's recommendation, and, after exhausting the administrative process, St. Joseph's sought judicial review.

The superior court rejected the AHCCCS finding that St. Joseph's provided only the last name "Sanchez" and not the patient's full name. The superior court also found the denial of payment arbitrary and capricious in light of mistakes in AHCCCS records that would have prevented AHCCCS from locating the patient in its system even if St. Joseph's had provided the paternal surname. The court ordered MCHP to pay St. Joseph's full charges incurred prior to July 2, 1989, when the patient was first available for transport to a county facility, and to pay the lesser charges that MCHP would have incurred from July 2 to July 20, had the patient been transferred to a county facility. The court ordered AHCCCS to pay the balance of St. Joseph's charges. From that judgment, AHCCCS and MCHP both appeal.

## DISCUSSION

■ As a preliminary matter, we accept, as the superior court should have accepted, the administrative finding that St. Joseph's provided only the name "Sanchez" in its initial call to AHCCCS. The superior court lacked any proper basis to substitute its judgment for the agency's on this pure issue of fact. "In appeals taken under the Administrative Review Act, neither this court nor the superior court weighs the evidence."

*Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prod., Inc.*, 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990). Here, the superior court did just that.

■ We will affirm the superior court's judgment, however, if it is correct for any reason. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985). We therefore examine the agency's evaluation of the fact that, because of inaccuracies in the AHCCCS records, it would have made no difference for St. Joseph's to provide the full name "Luera Sanchez."

■ We begin by observing that the agency had discretion to excuse St. Joseph's flawed effort to give timely notice of its patient's name. The AHCCCS notice rule provides:

[N]onproviders furnishing emergency services to members who are enrolled with a prepaid capitated contract provider must notify the member's contractor within 12 hours of the time the member registers for services.... Failure to provide timely notice *may* constitute cause for denial of payment.

A.A.C. Rule 9–22–210(B) (emphasis added). We examine the agency's exercise of the discretion afforded by this rule.

According to the agency, it was irrelevant that, because of inaccuracies in its own records, timely notice of the patient's complete name would have made no difference. As the hearing officer pointedly explained, "A batter who is thrown out at first base cannot complain that second base is missing."

■ This court owes respectful consideration to an agency's interpretation of its own regulations, but we are not bound by the agency's interpretation. *Maldonado v. Arizona Dep't of Economic Sec.*, 182 Ariz. 476, 478, 897 P.2d 1362, 1364 (App.1994). We are obliged to give rules and regulations a fair and sensible meaning, one consistent both with the language and the agency purpose. *Samaritan Health Serv. v. Arizona Health Care Cost Containment Sys. Admin.*, 178 Ariz. 534, 537, 875 P.2d 193, 196 (App.1994).

We have quoted the discretionary language of A.A.C. Rule 9–22–210(B). A related rule provides:

> Providers of services furnishing care to persons who have been or are to be hospitalized and whose AHCCCS membership or eligibility is not known shall contact the Administration. If the Administration determines that the person is enrolled in an AHCCCS plan, the provider shall notify the person's contractor of record within 12 hours from the time of presentation for treatment. If the Administration determines that a person is not eligible ..., and the provider has reason to believe that the person may be eligible, the provider shall officially notify the county eligibility office in the person's county of residence. If the provider notifies the county during the time that the applicant is hospitalized or receiving medical services, the notification shall be considered a priority application.

A.A.C. Rule 9–22–308(B).

The purpose of these rules is not to achieve a windfall for the health care contractor by relieving it of the cost of a member's necessary care. We believe rather that St. Joseph's correctly summarizes the purpose of the rules as to accommodate "the patient's interest in receiving immediate treatment, the responsible payor's interest in realizing cost savings by 'managing' the course of care, and the hospital's interest in being reimbursed for its services." Against the backdrop of this purpose, we consider the factors relevant to the agency's discretion to treat untimely notice as cause for denial of payment.

We begin by recognizing that St. Joseph's bears a measure of responsibility for the confusion that underlies this case. Any enterprise of its size doing business in the Southwest that depends on accurate identification of those it serves should familiarize its intake personnel with the common order of Hispanic surnames.

Many factors weigh, however, on the other side of the balance. First, there is no suggestion of bad faith on the part of St. Joseph's; nor was St. Joseph's dilatory in any respect. To the contrary, St. Joseph's made an immediate good faith effort to determine whether Mr. Luera Sanchez was a member of an AHCCCS plan by calling AHCCCS directly upon his admission for emergency care, and took prompt follow-up measures to enroll him in an AHCCCS plan.

Second, the fault of Maricopa County equalled or exceeded that of St. Joseph's. The County's failure to give AHCCCS accurate data blocked AHCCCS from identifying a member in response to a provider's complete and timely call.

Third, St. Joseph's *caused* no delay in notice to AHCCCS or MCHP. Had St. Joseph's given the full name "Luera Sanchez," and had the AHCCCS operator looked up the name "Luera," she would not have found his name, and MCHP would have received no earlier notice than it ultimately got.

Fourth, the trial court avoided any prejudice to MCHP by obliging it to pay only the costs that it would have incurred for the necessary care that its member received. The parties stipulated that, had MCHP treated its member at its own facility from July 2, the day he was first able to be moved, until July 20, when he was actually moved, MCHP would have incurred treatment costs of $29,-065.62. The trial court limited MCHP's responsibility for that period to the stipulated amount.

Fifth, just as the trial court's approach relieved MCHP of any prejudice, the agency's contrary award gave MCHP a windfall at St. Joseph's expense. It was MCHP, not St. Joseph's, that contractually undertook and accepted compensation in advance to cover any necessary treatment that Mr. Luera Sanchez required. St. Joseph's responded, as Arizona law requires, to a patient in need of emergency services. *Guerrero v. Copper Queen Hosp.*, 112 Ariz. 104, 106, 537 P.2d 1329, 1331 (1975). St. Joseph's did not undertake, however, to make a gift to MCHP of the costs of an MCHP member's care.

Such is the balance of considerations bearing on the exercise of discretion in this matter. And the balance weighs so heavily in the favor of St. Joseph's as to support the trial court's conclusion that the agency made an arbitrary and capricious decision in this

case. It is more accurate, however, in our judgment, to conclude that the agency did not exercise its discretion at all. We return to the hearing officer's explanation that "[a] batter who is thrown out at first base cannot complain that second base is missing." The first base analogy is telling. The agency thereby turned A.A.C. Rule 9–22–210(B), which is expressly written as a discretionary denial-of-payment rule, into an obligatory denial-of-payment rule. The agency equated one who fails to give timely notice with a runner thrown out at first base, who *shall* be denied payment, without any regard to the underlying circumstances or to relevant questions of diligence, prejudice, and good faith. We conclude that the agency abused, by failing to exercise, the discretion provided by its own rules.

■ We therefore conclude that the superior court properly vacated the director's decision. We pause, however, over the superior court's order that both MCHP and AHCCCS participate in reimbursing St. Joseph's for its costs. We have previously discussed the allocation of responsibility to MCHP for the full costs of St. Joseph's treatment of Mr. Luera Sanchez from his admission on June 30 to July 2 and the lesser costs that MCHP would have incurred for treatment in its own facility from July 2 to July 20. We affirm this aspect of the superior court's award, which gives appropriate consideration to MCHP's interest in managing, and thereby lessening, the costs of member care. St. Joseph's, however, offers no basis for holding AHCCCS liable for paying the balance of St. Joseph's costs. Nor did the trial court explain that portion of its award. MCHP received capitated payments from the AHCCCS administration to assume full responsibility for the medical care of Mr. Luera Sanchez. And the incorrect data on Mr. Luera Sanchez did not arise from any fault of AHCCCS; rather, it was supplied by Maricopa County. Because there is no basis under these circumstances for the superior court's order that AHCCCS reimburse St. Joseph's for any portion of its costs, we reverse that part of the trial court's order.

## CONCLUSION

In summary, we affirm the superior court's judgment vacating the director's denial of St. Joseph's claim; we affirm the superior court's award against MCHP; and we reverse the superior court's order that AHCCCS pay the remainder of St. Joseph's claim. We remand to the superior court for modification of its judgment in accordance with this opinion.

VOSS, P.J., and TOCI, J., concur.