IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


STEVEN EATON, a single person,          )      2 CA-CV 2003-0068
                                        )      DEPARTMENT A
                 Plaintiff/Appellant,   )
                                        )      O P I N I O N
          v.                            )
                                        )
ARIZONA HEALTH CARE COST                )
CONTAINMENT SYSTEM,                     )
                                        )
                 Defendant/Appellee.    )
                                        )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20006425

Honorable Kenneth Lee, Judge

AFFIRMED

---

Ibáñez & Wilkinson
  By Rose Marie Ibáñez                                          Tucson

     and

Roy G. Spece, Jr.                                              Tucson
                                          Attorneys for Plaintiff/Appellant

Johnston Law Offices, P.L.C.
  By Logan T. Johnston                                        Phoenix
                                        Attorneys for Defendant/Appellee

---

H O W A R D, Judge.

¶1　　　　The director of appellee Arizona Health Care Cost Containment System (AHCCCS) denied appellant Steven Eaton's request that AHCCCS waive the entire Medicaid lien against funds paid in settlement of his product liability suit. Eaton appealed to the superior court, which affirmed the director's decision. Eaton now appeals the superior court's ruling, contending that the director improperly found that 1) misrepresentations in a settlement negotiation did not constitute fraud, 2) the state cannot compromise the federal portion of a Medicaid lien, and 3) the misrepresentations could not be regarded as working an estoppel against AHCCCS. Because AHCCCS was prohibited by federal law from compromising the federal portion of the lien and Eaton did not show that fraud or estoppel should apply, we affirm.

¶2　　　　We view the facts in the light most favorable to upholding the director's decision. *See Empire West Cos., Inc. v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 95, 97, 893 P.2d 746, 748 (App. 1995). Eaton is an Arizona resident and a Medicaid recipient. As a patient with hemophilia, Eaton used medical infusion products manufactured by four pharmaceutical companies to treat his illness. From using these products, he and many other sufferers of hemophilia contracted the human immunodeficiency virus (HIV) and filed a class action lawsuit against the manufacturers. Although a settlement offer was made to the class, Eaton declined that offer and pursued his claim as an individual.

¶3　　　　After a six-week trial that resulted in a defense verdict, Eaton entered into settlement negotiations with the defendants. John Shirley, an employee of Public Consulting Group (PCG), a corporation that is a contractual partner used by AHCCCS to perform third-party liability recovery activities, attended the settlement conference. During negotiations, Eaton expressed concern about the Medicaid claim of $17,645.05, which is the expense of the medical

2

care Eaton had received. Shirley suggested that Eaton consider accepting the offer because Eaton "could go before an ALJ and seek to have the lien reduced significantly, and possibly to zero."[1] In reliance on this statement, Eaton accepted the settlement offer of $50,000.

¶4 Subsequently, AHCCCS agreed to compromise the lien from $17,645.05 to $11,200. AHCCCS explained that it had compromised Arizona's share of the total Medicaid payment in full and the residual amount represented the federal share, which AHCCCS could not legally compromise. Eaton filed an administrative complaint challenging AHCCCS's refusal to compromise the entire lien to zero. The administrative law judge (ALJ) ruled that the remaining $11,200 was the federal portion of the lien, which the state could not compromise under 42 U.S.C. § 1396k(b) and 42 C.F.R. § 433.154. The ALJ also acknowledged that Shirley had misrepresented AHCCCS's ability to compromise the lien and that these statements had misguided Eaton. But the ALJ also found that the misrepresentations did not estop AHCCCS from ultimately refusing to compromise the federal portion of the lien. The AHCCCS director found that the ALJ's decision was supported by sufficient evidence and accepted the decision in its entirety. On appeal, the superior court affirmed the director's decision, finding that substantial evidence supported the factual findings and that the ALJ did not err as to the conclusions of law. This appeal followed.

---

[1]Although the opening brief suggests that the settlement conference was part of this court's Appellate Settlement Conference Program, Rule 30, Ariz. R. Civ. App. P., 17B A.R.S., neither party has addressed the effect of subsection (n) of that rule, which pertains to confidentiality.

## FRAUD CLAIM

¶5        Eaton first argues that Shirley's statements constituted fraud and that AHCCCS is liable for its "contractual partner's" misrepresentation. In his argument, Eaton merely recites the ALJ's findings and the nine elements of fraud, stating, "[t]hese elements are obviously present." He does not analyze why AHCCCS would be liable for Shirley's alleged fraud or provide any supportive authority for that proposition. *See In re 1996 Nissan Sentra*, 201 Ariz. 114, ¶15, 32 P.3d 39, ¶15 (App. 2001) (argument not supported by authority waived). And regardless of Shirley's role in the settlement, Eaton did not actually sue Shirley, PCG, or AHCCCS for fraud. Instead, Eaton requested that AHCCCS waive the Medicaid lien in its entirety and then filed an administrative appeal when AHCCCS denied that request. Review of AHCCCS's decision not to reduce the lien is limited to whether the action was arbitrary and capricious. *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990). Eaton has not even argued that Shirley's alleged fraud rendered AHCCCS's decision arbitrary and capricious or that the statutes required a compromise of the lien because of the fraud.

¶6        In further support of his fraud claim, Eaton notes that any attorney who knowingly makes a false statement of material fact or law to a tribunal is subject to disciplinary measures. ER 3.3, Ariz. R. Prof. Conduct, Ariz. R. Sup. Ct. 42, 17A A.R.S. But Shirley was not an attorney; he was an agent of the company that contracts with AHCCCS for third-party collection work. Nor must we decide whether Shirley should receive administrative discipline. Therefore, because Eaton has not brought a proper fraud claim, has failed to support his contention with

4

authority, and has not explained how his fraud claim pertains to these proceedings, we reject his argument.

COMPROMISE OF FEDERAL MEDICAID LIENS

¶7        Eaton next argues that the director of AHCCCS erred in deciding that the state is prohibited from compromising the federal component of a Medicaid lien. On appeal from a superior court's review of an administrative decision, we must determine, as did the superior court, whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Samaritan Health Servs. v. Ariz. Health Care Cost Containment Sys. Admin.*, 178 Ariz. 534, 537, 875 P.2d 193, 196 (App. 1994). The court will allow an administrative decision to stand if there is any credible evidence to support it, but, because we review the same record, we may substitute our opinion for that of the superior court. *M & M Auto Storage Pool, Inc. v. Chem.Waste Mgmt., Inc.*, 164 Ariz. 139, 143, 791 P.2d 665, 669 (App. 1990). And when consideration of the administrative decision involves the legal interpretation of a statute, this court reviews de novo the decisions reached by the administrative officer and the superior court. *Jones v. County of Coconino*, 201 Ariz. 368, ¶10, 35 P.3d 422, ¶10 (App. 2001).

¶8        Medicaid is a medical assistance program for eligible low-income individuals, established by subchapter XIX of the federal Social Security Act, 42 U.S.C. § 1396a-1396u. Although a state's participation in the Medicaid program is voluntary, any participating state must comply with certain provisions of the federal Medicaid statute. *Westside Mothers v. Haveman*, 289 F.3d 852, 856 (6th Cir. 2002). One such provision requires the state agency to ascertain whether any third party is legally liable for the medical services and goods furnished to the Medicaid patient and seek reimbursement from the third party if the reimbursement that the state

5

reasonably expects to recover exceeds the cost of recovery. 42 U.S.C. § 1396a(a)(25); 42 C.F.R. §§ 433.138, 433.139(d). Any reimbursement collected shall be retained by the state to reimburse it for medical assistance payments made on behalf of the recipient, with appropriate reimbursement of the federal government to the extent of its participation in the financing of such medical assistance. 42 U.S.C. § 1396k(b). Any remaining funds will then be paid to the recipient. *Id.*

¶9 Several states, including Arizona, have enacted lien compromise statutes that allow state Medicaid agencies to waive some or all of the lien in certain circumstances. Arizona's lien compromise statute mandates that AHCCCS compromise a lien claim if the "compromise provides a settlement of the claim that is fair and equitable." A.R.S. § 36-2915(H). When determining what is fair and equitable, three factors must be considered: 1) the nature and extent of the patient's illness, 2) sufficiency of insurance and other sources of indemnity, and 3) any other factor relevant for a fair and equitable settlement under the circumstances of a particular case. § 36-2915(I).

¶10 In response to these lien statutes, the Health Care Financing Administration[2] (HCFA), the federal agency charged with administering Medicaid, released National Memorandum No. 88-10 in 1988. This memorandum detailed HCFA's interpretation of the lien compromise statutes and stated that a recipient had the right to settlement funds only after the Medicaid payments were fully funded. In 1990, HCFA further articulated its interpretation of the lien statutes by amending the State Medicaid Manual to provide that "the Medicaid program must be fully reimbursed before the recipient can receive any money from the settlement or award." State

---

[2]Now called the Centers for Medicare and Medicaid Services.

Medicaid Manual (SMM) § 3907. These memoranda are based, in part, on Congress's intent that Medicaid be the "payor of last resort." *See* H.R. Conf. Rep. No. 99-453, at 542 (1985); *see also Wesley Health Care Ctr., Inc. v. DeBuono*, 244 F.3d 280, 281 (2d Cir. 2001); *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 231 n.1, 928 P.2d 653, 655 n.1 (App. 1996).

¶11 HCFA's interpretation was upheld as a reasonable interpretation of the statute in two Department of Health and Human Services administrative decisions: *California Department of Social and Health Services*, No. A-94-114, 1995 WL 66334 (App. Div., Jan. 5, 1995) (*DAB No. 1504*), and *Washington Department of Social and Health Services*, No. A-95-159, 1996 WL 157123 (App. Div., Feb. 7, 1996) (*DAB No. 1561*). At issue in *DAB No. 1504* was California's statutory scheme, which allowed the director to reduce a lien either by twenty-five percent, fifty percent, or waive part or all of its claim if the director determined that to be appropriate. Cal. Welf. & Inst. Code §§ 14124.71(b); 14124.72(d); 14124.78. Similarly, *DAB No. 1561* involved a Washington statute that gave the state director the discretion to compromise a lien based on the circumstances of each individual settlement. Wash. Rev. Code § 43.20B.050(1). In both of these actions, the ALJ upheld HCFA's position as a reasonable interpretation of the statute that, when a third party is responsible for paying a recipient's medical expenditures, state agencies must fully reimburse HCFA for the federal share of those expenditures before allowing the recipient to receive money from a settlement or award. *DAB No. 1504*, 1995 WL 66334, at *4; *DAB No. 1561*, 1996 WL 157123, at *5-6. But both decisions specifically noted that, although the federal share must be reimbursed, each state is free to reduce or waive its own share of the recoveries. *DAB No. 1504*, 1995 WL 66334, at *8; *DAB No. 1561*, 1996 WL 157123, at *9.

¶12     Despite these administrative decisions, state courts have offered varying interpretations of the effect of the federal Medicaid requirements on their own state agencies. In California, which was the subject of *DAB No. 1504*, a state statute allowed a court to limit reimbursement of Medicaid liens if undue hardship would occur to the recipient. Cal. Govt. Code § 985(g). Without referring to *DAB No. 1504*, a California appeals court upheld the statute, reasoning that nothing in the statute prevents the state Medicaid agency from following its federal mandate to vigorously seek reimbursement. *Garcia v. County of Sacramento*, 126 Cal. Rptr. 2d 465, 473-74 (Cal. App. 2002). Thus, allowing the courts to "deny reimbursement in extenuating circumstances does not run afoul of a plan that requires [the agency] to seek reimbursement" under 42 U.S.C. 1396a(a)(25)(A)-(B). *Id.* at 472.

¶13     An Indiana court also upheld at least a limited right on the part of the state to compromise the federal portion of the lien. Indiana's lien statute provides, in part, that if a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits is diminished by 1) comparative fault or 2) uncollectability of full value of the claim, the lien shall be diminished in the same proportions as the claimant's recovery. Ind. Code § 34-51-2-19. Although this statute is similar to California's percentage reduction, the Indiana court in *In re Guardianship of Wade*, using a preemption analysis, read the Medicaid statute not as mandating full recovery, but as obtaining so much of a reimbursement as the state could "reasonably expect to recover." 711 N.E.2d 851, 855 (Ind. Ct. App. 1999) (citing 42 U.S.C. § 1396(a)(25)(B)). The court then held that the amount the state could fully expect to recover was "subject to" the lien reduction statute. *Id.* In its analysis, the court noted the recent decision in *DAB No. 1504*, but dismissed its impact since it was not binding authority in Indiana. *Id.*

8

¶14 In contrast, a New Jersey appellate court in *Waldman v. Candia*, 722 A.2d 581 (1999), treated *DAB No. 1504* as dispositive. The court first noted that because Medicaid is funded both by state and federal financial participation, HCFA is entitled to recover its share of Medicaid payment once a third-party payment has been made. *Id.* at 587. After citing to *DAB No. 1504* as a primary authority, the court then held as a matter of law that "the states are bound by their duty of repayment even if they compromise a lien, *i.e.*, even if they decide, based on the facts of an individual case, to allow the beneficiary to retain a larger portion of the recovery proceeds." *Id.*

¶15 A New York court has also taken a restrictive view of the state's ability to compromise the federal portion of the lien. New York's lien compromise statute allows the local public welfare official to fix the amount of a Medicaid lien or release and discharge the lien entirely. N.Y. Soc. Serv. §§ 104-b(1), (7). The court reasoned that the agency could reduce the amount that it would accept in satisfaction of the lien in order to facilitate settlement between the parties. *See Calvanese v. Calvanese*, 710 N.E.2d 1079, 1083 (N.Y. 1999). But when sufficient funds are available from a responsible third party, this ability to settle will not affect the agency's entitlement to full recovery; otherwise, Medicaid's status as a "payor of last resort" would be jeopardized. *Id.*

¶16 We consider whether AHCCCS may compromise the federal portion of its Medicaid liens in light of this varied and conflicting legal background. Federal law provides that, when a state collects from a liable third party, any reimbursement collected will first be applied to pay the state for its portion of the recipient's medical benefits, and then to the United States government "to the extent of its participation in the financing of such medical assistance." 42 U.S.C.

9

§ 1396k(b). Nevertheless, as shown by the above cases, the Social Security Act is at least ambiguous with respect to the specific issue of whether the states may compromise the federal portion of the Medicaid lien. Accordingly, we give substantial deference to the authorized agency's interpretation of the statute, so long as its interpretation is based on a permissible construction of the statute. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694, 703 (1984); *State v. Turner*, 175 Ariz. 256, 259, 855 P.2d 442, 445 (App. 1993); *see also Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 398-99, 116 S. Ct. 1396, 1401, 134 L. Ed. 2d 593, 602 (1996) (when agency administrator chooses among conflicting reasonable interpretations, reviewing courts must respect the agency's judgment). Such deference is particularly warranted with respect to interpretation of the Social Security Act because of its intricate nature. *Perry v. Dowling*, 95 F.3d 231, 236 (2d Cir. 1996).

¶17 The authority to oversee and administer the Medicaid program has been delegated to HCFA by the Secretary of Health and Human Services. *See* 42 U.S.C. § 1302; 49 Fed. Reg. 35,247, 35,249 (1984). Under this authority, HCFA has interpreted 42 U.S.C. § 1396k(b) to require that the federal government receive reimbursement of its claim, even if the remaining funds are inadequate to make the benefit recipient whole. *See* SMM § 3907; *DAB No. 1504*, 1995 WL 66334, at *4; *DAB No. 1561*, 1996 WL 157123, at *5. This interpretation is consistent with Congress's intent that Medicaid remain the payor of last resort. *See* H.R. Conf. Rep. No. 99-453, at 542 (1985). Because HCFA's interpretation that 42 U.S.C. § 1396k(b) requires that the federal Medicaid program must be fully reimbursed before the recipient can receive any funds from the settlement or award is reasonable, we must defer to that interpretation.

10

**¶18**         We also conclude that the analysis in *Waldman* and *Calvanese* is more consistent with our case law in related areas and more persuasive. In *Waldman*, the court held that once a third-party payment was made, HCFA was entitled by statute to recover. *Waldman*, 722 A.2d at 587. Similarly, in *LaBombard v. Samaritan Health System*, this court upheld a health care provider's right to recover on its lien from third-party settlement proceeds, noting that "'where rights are clearly established and defined by statute, equity has no power to change or upset such rights.'" 195 Ariz. 543, ¶17, 991 P.2d 246, ¶17 (App. 1998) (citations omitted).

**¶19**         Applying these principles here, federal law requires AHCCCS to use its best efforts to collect from third-party tortfeasors the amount of Medicaid payments for Eaton's medical care. 42 U.S.C. § 1396a(a)(25)(A). AHCCCS is subrogated to the recipient's rights against a third party and may also require the recipient to assign his claim against a third party to it, to the extent of the medical payments. *See* A.R.S. § 12-962(B). HCFA is then entitled by statute to recover its contribution to Eaton's medical care from the third-party settlement. 42 U.S.C. § 1396k(b); 42 C.F.R. § 433.154. Accordingly, HCFA's rights are "clearly established and defined by statute." *LaBombard*, 195 Ariz. 543, ¶17, 991 P.2d 246, ¶17. And, the federal statutes would take precedence over any conflicting state laws. *See US W. Communications, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, ¶23, 34 P.3d 351, ¶23 (2001).

**¶20**         Based on the foregoing analysis, we conclude that the director did not abuse his discretion in refusing to waive the federal portion of the lien because he was prohibited by federal law from doing so. Consequently, the trial court did not err in upholding the director's decision.

**¶21**         At oral argument, Eaton maintained that, even if the federal statutes prohibited AHCCCS from compromising the federal portion of the lien, A.R.S. § 36-2915 allows AHCCCS

11

to do so and then bear the risk of HCFA auditing its records and withholding future funds. We need not decide whether § 36-2915(H) allows AHCCCS to compromise the federal portion of the lien because here AHCCCS, through its director, refused to do so; thus, this issue is not directly before us. And we cannot say that the director acted arbitrarily or capriciously in refusing to compromise the lien in the face of HCFA's interpretation that Medicaid must be fully reimbursed prior the recipient receiving any portion of the settlement.

¶22       Eaton argues that this interpretation will result in AHCCCS and HCFA actually recovering less because recipients who may only recover the amount of the federal lien or less will have no incentive to pursue the claim. But AHCCCS may pursue the claim against the third parties directly if the claimant fails to do so. *See* A.R.S. § 12-962(B)(2). Thus, even when the amount of the recovery is less than the federal lien, AHCCCS is still able to fulfill its duty. Finally, the parties indicated that, despite HCFA's general position against the states compromising the federal portion of the liens, HCFA itself will sometimes compromise the federal portion in certain circumstances.[3] Therefore, even if the amount of the federal lien exceeds the recovery, HCFA may still provide the recipient an incentive to pursue the claim.

## ESTOPPEL AGAINST AHCCCS

¶23       Eaton also argues that the ALJ erred when he determined that Shirley's misrepresentations should have estopped AHCCCS from claiming that it could not compromise the federal portion of the lien. Assuming, without deciding, that the ALJ was authorized to consider the effect of estoppel in this proceeding, *see Beazer Homes Arizona, Inc. v. Goldwater*,

---

[3]But such action was not requested from HCFA in this case.

196 Ariz. 98, ¶11, 993 P.2d 1062, ¶11 (App. 1999) (jurisdiction and powers of any state agency are strictly limited by the terms of the statute that creates the agency), we will examine the propriety of the ALJ's decision. We review the ALJ's rejection of the estoppel argument for an abuse of discretion. *Carondelet Health Servs. v. Ariz. Health Care Cost Containment Sys. Admin.*, 182 Ariz. 502, 504, 897 P.2d 1388, 1390 (App. 1995).

¶24        Generally, estoppel requires three elements: 1) the party to be estopped has committed acts inconsistent with a position it later adopts; 2) reliance by the other party; and 3) injury to the latter resulting from the former's repudiation of its prior conduct. *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, ¶35, 959 P.2d 1256, ¶35 (1998). But in order to invoke estoppel against the state, a higher standard is required for each of these three elements. *Id.* at ¶33 (citing *Freightways, Inc. v. Ariz. Corp. Comm'n*, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981)). As to the first element, it is rare that satisfactory evidence of absolute, unequivocal, and formal state action will be found unless it is in writing. *Id.* at ¶36.

¶25        In order to satisfy the first element, Eaton was required to show that AHCCCS committed acts inconsistent with a position it later adopted and that it had done so formally. According to the findings by the ALJ, Shirley stated that Eaton "could go before an ALJ and seek to have the lien reduced significantly, and possibly to zero." This statement did not commit AHCCCS to any position, nor did it constitute a promise to Eaton that the lien would be reduced to nothing. Therefore, this statement is not the "absolute, unequivocal and formal state action" required to estop the state. *Id.* It was an unwritten, "off-the-cuff" statement by a non-supervisory employee of a contracting partner, which the court in *Valencia* stated would not have the degree

13

of formality necessary to estop the state. Accordingly, the director properly found that the state was not estopped from refusing to compromise the federal portion of the lien.

¶26 We hold that, when a personal injury settlement or award provides sufficient funds to the recipient to reimburse a Medicaid lien in full, absent an HCFA compromise, 42 U.S.C. § 1396k(b) requires that the federal portion of that lien amount be fully reimbursed before the recipient can receive any funds from the settlement or award. Further, because Eaton neither filed a proper fraud claim nor satisfied the *Valencia* test for estoppel, he has failed to show that the director of AHCCCS abused his discretion or otherwise erred by refusing to compromise the federal portion of the lien. Accordingly, the superior court's decision is affirmed.

_____
                                        JOSEPH W. HOWARD, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____
M. JAN FLÓREZ, Judge


14