NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

REHAB ARIZONA, L.L.C., *Plaintiff/Appellant*,

*v.*

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 18-0511
FILED 4-9-2019

Appeal from the Superior Court in Maricopa County
No.  CV2017-014551, LC2017-000497-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

The Nelson Law Group, P.L.L.C., Phoenix
By Timothy A. Nelson
*Counsel for Plaintiff/Appellant*

Johnston Law Offices, P.L.C., Phoenix
By Logan T. Johnston III
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O N E S**, Judge:

¶1　　　　Rehab Arizona, L.L.C. (RAZ) appeals the superior court's order affirming the Arizona Health Care Cost Containment System (AHCCCS) decision finding a credible allegation of fraud and upholding the suspension of Medicaid payments to RAZ.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　AHCCCS is the state agency that administers health care programs to Arizona's eligible indigent population.[1]  At the relevant time, RAZ was a health care provider that offered rehabilitative therapies to patients in Mesa, approximately fifty percent of whom were AHCCCS members.

¶3　　　　In August 2014, RAZ contracted with AHCCCS to provide services to AHCCCS members.  Under the Participating Provider Agreement (PPA), RAZ agreed: "No Provider may bill with another Provider's ID number, except in *locum tenens* situations."[2]  The PPA also required RAZ to comply with all federal, state, and local laws governing its performance of the PPA.

¶4　　　　In February 2017, AHCCCS referred RAZ to the Arizona Attorney General (AAG) for engaging in fraudulent billing practices.  AHCCCS confirmed RAZ had submitted claims seeking reimbursement for services purportedly performed by Dr. Carvel Jackson, even though Dr. Jackson had not actually provided those services.  Indeed, in September

---

[1]　　　"We view the facts in the light most favorable to upholding the director's decision."  *Eaton v. AHCCCS*, 206 Ariz. 430, 431, ¶ 2 (App. 2003) (citing *Empire W. Cos. v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 95, 97 (App. 1995)).

[2]　　　*Locum tenens* means "a practitioner who temporarily takes the place of another."  Dorland's Illustrated Medical Dictionary 1088 (31st ed. 2007).

2016, Dr. Jackson had written to RAZ, advising it was inappropriately doing business under his name and he was "not willing to allow [RAZ] to continue to use J Carvel Jackson DO, the name, the person, the tax identification numbers or insurance contracts without compensation."

¶5        The AAG opened a criminal investigation into RAZ's billing practices.  In March 2017, AHCCCS imposed a temporary, system-wide suspension of [Medicaid] payments . . . pending further investigation into a credible allegation of fraud leveled against [RAZ]."  AHCCCS further advised that "the allegation, facts and existing evidence . . . ha[d] sufficient indicia of reliability to justify this suspension of payment."  RAZ requested a hearing to determine whether AHCCCS had properly suspended its payments.

¶6        At the August 2017 hearing, RAZ argued AHCCCS lacked the legal authority to impose the suspension, or alternatively, good cause existed to lift the suspension.  RAZ submitted affidavits illustrating its commitment to compliance with the PPA after identifying various "areas needing improvement" in October 2016.  RAZ emphasized it had terminated its former compliance officer and engaged an independent consulting firm to ensure future compliance.

¶7        The administrative law judge (ALJ) rejected RAZ's arguments, found a credible allegation of fraud existed, and recommended that the suspension of payments remain in effect until AHCCCS determines "there is insufficient evidence of fraud . . . or legal proceedings related to [the] fraud are completed."  AHCCCS adopted the ALJ's findings of fact and recommendation and denied RAZ's appeal.  The superior court affirmed AHCCCS's decision, and RAZ timely appealed to this Court.  We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1)[3] and -2101(A)(1).

## DISCUSSION

### I.        AHCCCS Had Legal Authority to Suspend Payments to RAZ.

¶8        RAZ argues AHCCCS lacked legal authority to suspend Medicaid payments because: (1) Arizona never adopted enabling legislation that authorized payment suspension; (2) the federal regulation authorizing a payment suspension, 42 C.F.R. § 455.23, exceeds the scope of the Patient Protection and Affordable Care Act (ACA), 42 U.S.C.

---

[3]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

§ 1396b(i)(2)(C); and (3) the federal regulation authorizing payment suspension violates the Tenth Amendment. To resolve these issues, we must interpret state and federal law. We review questions of statutory and constitutional interpretation *de novo*. *State v. McCann*, 200 Ariz. 27, 28, ¶ 5 (2001) (citation omitted); *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529 (1994) (citing *Marsoner v. Pima Cty.*, 166 Ariz. 486, 488 (1991)).

**¶9** Although RAZ admits federal fraud and abuse controls apply, *see* A.R.S. § 36-2905.04(C) ("[T]he [M]edicaid fraud and abuse controls that are enacted under federal law apply to all . . . contractors . . . that provide services to persons who are eligible for the system."), it argues that no Arizona statute grants AHCCCS the authority to suspend Medicaid payments based upon an unproven allegation of fraud. RAZ correctly notes that state administrative agencies have no inherent power. *Ariz. State Bd. of Regents ex rel. Ariz. State Univ. v. Ariz. State Pers. Bd.*, 195 Ariz. 173, 175, ¶ 9 (1999) (citing *Kendall v. Malcolm*, 98 Ariz. 329, 334 (1965)). Indeed, an administrative agency's powers are limited to those granted by constitution or statute. *Id.* Moreover, the state agency must exercise its authority in a manner compatible with the administrative structure Congress enacted into law. *FDA v. Brown & Williamson Tobacco Co.*, 529 U.S. 120, 125 (2000) (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988)). Thus, AHCCCS's power to suspend Medicaid payments exists only to the extent provided by enabling legislation.

**¶10** Arizona law authorizes AHCCCS to supervise the "[e]stablishment and management of a system to prevent fraud by members, subcontracted providers of care, contractors and noncontracting providers." A.R.S. § 36-2903(B)(9). AHCCCS may govern providers by contract and "require contract terms as necessary in the judgment of the director to ensure adequate performance and compliance with all applicable federal laws." A.R.S. § 36-2903(M); *see also* 42 C.F.R. § 455.23(a)(1) (requiring a suspension of "all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud"). AHCCCS "may also adopt rules for the withholding or forfeiture of payments" to a contractor that fails "to comply with a provision of the contractor's contract." A.R.S. § 36-2903(M). Finally, AHCCCS can impose sanctions upon a contractor for violating any provision of its contract. Ariz. Admin. Code R9-22-606(A).

**¶11** These statutes and regulations specifically authorize AHCCCS to impose sanctions, including suspending Medicaid payments, if RAZ violates any provision of its PPA. RAZ admitted it violated the PPA by billing under Dr. Jackson's name for services provided by

uncredentialed physicians who replaced Dr. Jackson, as well as midlevel providers Dr. Jackson supervised. Therefore, suspension was justified under these circumstances.

¶12 RAZ next argues 42 C.F.R. § 455.23 exceeds the scope of the ACA. Specifically, RAZ contends that although the ACA requires the Department of Health and Human Services (DHHS) to withhold payments from *a state* in specific circumstances, it does not require a state to withhold payments from *providers*.

¶13 The ACA provides that payments by DHHS cannot be made "for an item or service . . . furnished . . . by any individual or entity to whom the State has failed to suspend payments under the plan during any period when there is pending an investigation of a credible allegation of fraud." 42 U.S.C. § 1396b(i)(2)(C). Under the ACA, the State has discretion to forego the suspension if it determines "there is good cause not to suspend such payments." 42 U.S.C. § 1396b(i)(2)(C). The federal regulation implementing this statute likewise provides that a state Medicaid agency "must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud . . . unless the agency has good cause to not suspend payments." 42 C.F.R. § 455.23(a)(1).

¶14 Under this statutory scheme, the federal regulation implements the ACA's mandate that, to receive reimbursements from DHHS, a state must withhold payments to an entity that is the subject of a pending investigation of a credible allegation of fraud. Nothing within the record suggests this requirement is inconsistent with the intent of Congress. Accordingly, 42 C.F.R. § 455.23 does not exceed the scope of the ACA.[4]

¶15 RAZ further argues 42 C.F.R. § 455.23 violates the Tenth Amendment. The Tenth Amendment provides that all "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people." U.S. Const. amend. X. Although Congress cannot require states to regulate, Congress can provide states with encouragement or incentives to

---

[4] We also reject RAZ's argument that the federal regulation violates the intent of Executive Order No. 13765. The Order is intended to "minimize the unwarranted economic and regulatory burdens of the [ACA]." Exec. Order No. 13765, 82 Fed. Reg. 8351 (Jan. 20, 2017). The Order does not "create any right or benefit . . . enforceable at law or in equity," and nothing in the Order suggests it was intended to limit or waive investigations regarding credible allegations of Medicaid fraud. *Id.* at 8352.

implement certain regulations. *New York v. United States*, 505 U.S. 144, 166, 178 (1992); *South Dakota v. Dole*, 483 U.S. 203, 206-07, 211 (1987). The Tenth Amendment is only implicated if the "financial inducement offered might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole*, 483 U.S. at 211 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)).

**¶16**          Pursuant to 42 C.F.R. § 455.23(a)(1), "[t]he State Medicaid agency must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud . . . unless the agency has good cause to not suspend payments." RAZ argues this provision imposes an "affirmative unconditional duty" upon the states. A state is not, however, required to accept federal Medicaid funds, and it is only after a state elects to receive these funds that it must comply with the attending federal regulation. Moreover, a state retains the discretion to decline a payment suspension if it finds good cause to do so. Thus, the statute is not so coercive as to constitute compulsion, and therefore does not violate the Tenth Amendment. The fact that another provision of the ACA, not at issue here, violated the Constitution does not persuade us that 42 C.F.R. § 455.23 does. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 587-88 (2012) (concluding the rest of the ACA "will remain 'fully operative as a law,'" and "need not fall in light of [the Court's] constitutional holding") (quoting *Champlin Ref. Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 234 (1932)).

## II.      Substantial Evidence Supports the Finding of a Credible Allegation of Fraud.

**¶17**          RAZ argues the suspension of Medicaid payments should be lifted because "there has been no fraud." We will uphold AHCCCS's decision unless it is "illegal, arbitrary, capricious or involved an abuse of discretion." *Eaton*, 206 Ariz. at 432, ¶ 7 (citing *Samaritan Health Servs. v. AHCCCS*, 178 Ariz. 534, 537 (App. 1994)). We examine the record to determine whether substantial evidence supports the judgment, but we will not reweigh the evidence. *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7 (App. 2002) (citing *Carley v. Ariz. Bd. of Regents*, 153 Ariz. 461, 463 (App. 1987), and *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336 (App. 1984)).

**¶18**          Substantial evidence supports the ALJ's finding that a credible allegation of fraud against RAZ existed. At the hearing, witnesses testified RAZ procured payments for services being performed by an unauthorized provider by using a different, credentialed provider's

identification. Written communications by Dr. Jackson further supported the allegation. Accordingly, we find no abuse of discretion.

### III. Substantial Evidence Supports the Decision Not to Lift the Suspension.

**¶19** Alternatively, RAZ argues that even if the payment suspension was lawful, AHCCCS has since abused its discretion by failing to lift the suspension for good cause pursuant to 42 C.F.R. § 455.23(e)(2), (3), (4), or (6). We will uphold AHCCCS's decision unless it is illegal, arbitrary, capricious, or involved an abuse of discretion. *See supra* ¶ 17.

**¶20** AHCCCS may lift a previously imposed payment suspension if it finds good cause to do so. 42 C.F.R. § 455.23(a)(1), (e). As relevant here, AHCCCS may find good cause if:

> (2) Other available remedies implemented by the State more effectively or quickly protect Medicaid funds.
>
> (3) The State determines, based upon the submission of written evidence by the individual or entity that is the subject of the payment suspension, that the suspension should be removed.
>
> (4) Beneficiary access to items or services would be jeopardized by a payment suspension because of either of the following:
>
> > (i) An individual or entity is the sole community physician or the sole source of essential specialized services in a community.
> >
> > (ii) The individual or entity serves a large number of beneficiaries within a HRSA-designated medically underserved area.
>
> . . . .
>
> (6) The State determines that payment suspension is not in the best interests of the Medicaid program.

42 C.F.R. § 455.23(e).[5]

**¶21**        RAZ argues AHCCCS should have lifted the suspension pursuant to 42 C.F.R. § 455.23(e) because its prior practices resulted from a good faith misunderstanding of AHCCCS requirements and because it has since demonstrated a commitment to future compliance.    These circumstances do not constitute good cause under 42 C.F.R. § 455.23(e)(2), which requires a finding that "other available remedies implemented *by the State* more effectively or quickly protect Medicaid funds."   (Emphasis added).  RAZ's internal actions regarding compliance do not fall within this category.   Moreover, the ALJ already considered and rejected RAZ's arguments when it declined to lift the suspension.  Nothing within the record suggests error in this finding.

**¶22**        RAZ also argues the payment suspension jeopardizes beneficiary access to items or services.   *See* 42 C.F.R. § 455.23(e)(4). Although approximately fifty percent of RAZ's patients were AHCCCS-eligible members, nothing within the record reflects that RAZ is "the sole source of essential specialized services in a community" or that RAZ provides services within an area designated by the Health Resources and Services Administration as "medically underserved."  *Id.*  Accordingly, subsection (4) is not applicable.

**¶23**        RAZ argues that the payment suspension is not in the best interest of the Medicaid program.  However, substantial evidence supports the ALJ's finding that a credible allegation of fraud against RAZ exists and that the investigation is ongoing.   Accordingly, nothing in the record suggests Medicaid would benefit from RAZ's continued operations.

**¶24**        Finally, RAZ argues that the duration of the investigation constitutes good cause to lift the suspension. The duration of a suspension, however, is not enumerated in the federal regulation as a basis for good cause. *See* 42 C.F.R. § 455.23(e).  Moreover, because RAZ did not develop this argument at the administrative hearing, it is waived. *See Stulce v. Salt River Project Agric. Improvement & Power Dist.*, 197 Ariz. 87, 94, ¶¶ 27-28

---

[5]        AHCCCS may also find good cause if "[l]aw enforcement officials have specifically requested that a payment suspension not be imposed because such a payment suspension may compromise or jeopardize an investigation," or "[l]aw enforcement declines to certify that a matter continues to be under investigation."  42 C.F.R. § 455.23(e)(1), (5).  Neither of these subsections apply here.

(App. 1999). Accordingly, we find no abuse of discretion in AHCCCS's decision not to lift the suspension.

## CONCLUSION

**¶25** We affirm the superior court's order affirming the suspension of Medicaid payments to RAZ.

**¶26** RAZ requests an award of attorneys' fees but fails to specify a statutory basis for its request. Accordingly, we deny RAZ's request. *See* ARCAP 21(a)(2) (stating a claim for fees must "specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees [and] [i]f a party fails to comply with this requirement, the appellate court may decline to award fees on that basis").



AMY M. WOOD • Clerk of the Court
FILED:  AA